**Donald T. GILL and Marie Gill, Plaintiffs-Appellants,**

v.

**Deputy Sheriff Charles MANUEL et al., Defendants-Appellees.**

**No. 71–2555.**

United States Court of Appeals, Ninth Circuit.

Nov. 9, 1973.

---

13. *Id.* at 68–69, 68 S.Ct. 401.

14. 11 U.S.C. § 69(b).

15. *Cf.* O'Hagan v. Blythe, 354 F.2d 83 (2d Cir. 1965).

16. *Cf.* Penfield Co. v. SEC, 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947).

John Francis Carroll (argued), Wilmington, Cal., for plaintiffs-appellants.

Michael H. Dougherty (argued), Deputy County Counsel, Los Angeles, Cal., for defendants-appellees.

Before BROWNING and HUFSTEDLER, Circuit Judges, and TAYLOR,* District Judge.

### PER CURIAM:

This is an appeal from the final judgment made and entered, after a jury trial, in favor of defendants-appellees, Deputy Sheriffs Charles Manuel and Michael Currin, and against the plaintiffs-appellants, Donald Gill and Marie Gill, husband and wife. The Gills brought this action to redress the alleged deprivation of their civil rights secured to them under Title 42 U.S.C., § 1983.

A brief synopsis of the facts is that at or about 9:30 PM on October 19, 1970, Deputy Sheriffs Manuel and Currin, wearing plainclothes, arrived at the Gill residence in an unmarked sheriff's car to arrest Donald Gill on a misdemeanor warrant. The facts as to what happened when they attempted to serve the warrant are in complete conflict. The appellants claim they were awakened by intruders, abused and threatened, and that Donald Gill received a severe beating. The appellees contend they used only necessary and reasonable force to subdue the 128 pound Donald Gill under the circumstances.

* District of Idaho, sitting by designation.

Appellants have assigned numerous errors, only three of which merit discussion for the purposes of this opinion. First, it is alleged that the trial court erred in not instructing the jury on the issue of punitive damages.

During the trial, Mrs. Gill testified that she observed two men standing over her husband, beating him while he lay on the floor of their small living room. She then observed Deputy Currin pick her husband up and throw him into the bathroom where she witnessed the appellees beat her husband as he lay on the floor. She also testified that her husband was handcuffed while in the bathroom and then thrown outside the house. Mr. Gill also testified to this alleged beating. The record reveals the presence of blood in the small living room and all over the bathroom. Mr. Gill's physical condition, immediately after being arrested, attests to the fact that he did receive severe injuries as a result of his altercation with the appellees. Although the testimony of appellees refutes some of the facts recited above by the Gills, the final determination of whether punitive damages should be awarded has to be left to the discretion of the trier of fact. See Lee v. Southern Home Sites Corporation, 429 F.2d 290, 294 (5th Cir. 1970), wherein it is stated:

> "The allowance of such damages [referring to punitive damages] inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of the fact."

The trial court refused to give the appellants' requested punitive damages instruction on the theory that "there has to be a personal animosity or involvement to get the malice required for punitive damages. Just a mere professional overreaction is not sufficient." (R.T. page 661)

While we agree with the trial judge that a showing of a *personal* animosity or involvement between the parties may present a stronger case for the awarding of punitive damages, we do not agree that it is a prerequisite to instructing the jury as to punitive damages or to the granting of such damages. An instruction on punitive damages is appropriate when the facts are such that the jury could find the action and conduct of police officers to be willful and malicious apart from any showing of personal animosity between the parties. See generally 14 A.L.R.Fed 608, Civil Rights Acts—Punitive Damages. The testimony presented by the Gills contains the factual basis from which the jury could have found the malice required for the awarding of punitive damages if they found the witnesses to be credible. The questions in regard to the credibility of the witnesses and the determination of whether the facts presented were sufficient for an award of punitive damages are issues reserved for determination by the trier of fact. See *Lee,* supra.

Appellants also contend that the trial court's repeated instructions to the jury, in regard to appellants' claim for punitive damages not being an issue in the case, prejudiced the appellants and misled the jury.

The record reflects that on three separate and distinct occasions, during the court's instructions to the jury, reference was made to punitive damages. The court's first such reference was as follows:

> "Now it is further alleged that Plaintiff Gill further alleges that he is entitled to some punitive and exemplary damages. But the Court has held outside the hearing of the jury that this issue is out of the case and you may not consider oral or any punitive or exemplary damages in addition to any actual—you may not award any punitive—you may not even consider any punitive or exemplary damages in addition to any actual or compensatory damages claimed by the plaintiff, if

you should find that he is so entitled to any such actual and compensatory damages." [R.T. pages 729–730]

Later, the court again instructed the jury concerning punitive damages:

"And they also deny that plaintiffs are entitled to any punitive—as I say, punitive or exemplary damages, but now as I have said, that is not an issue. Punitive or exemplary damages is not an issue. You are not to consider it any way and you are not, of course, to award any punitive or exemplary damages." [R.T. page 733]

The trial court's third reference to punitive damages occurred near the close of the instructions:

"Now if you find the defendants are liable, then you must assess what damages are plaintiffs entitled to recover.

Nothing which I have indicated to you —only actual or compensatory damages are permissible. No punitive damages." [R.T. page 747]

This court is in agreement with the rule announced in Flentie v. American Community Stores Corporation, 389 F.2d 80, 83 (8th Cir. 1968): "Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error."

Since the trial court decided not to instruct the jury on the issue of punitive damages, the repeated emphasis in regard to that matter by the court gave undue prominence to the court's feeling of liability and could have easily minimized the effect of the court's instructions concerning compensatory damages. See White Auto Stores v. Reyes, 223 F.2d 298, 305 (10th Cir. 1955) and Halladay v. Verschoor, 381 F.2d 100, 113 (8th Cir. 1967).

■■ It is the appellees' contention that since the question of liability was decided in their favor, the jury never considered the question of damages and thus any error in the court's instructions concerning damages is harmless. We do not argue with this principle in circumstances which justify its application.

However, we are of the opinion that the total effect of the trial court's failure to affirmatively instruct on the question of punitive damages, together with the repeated emphasis placed on the fact that the jury was not to consider the issue of punitive damages, could have had considerable adverse effect on the jury's determination of liability in the first instance. It should also be noted that an award of compensatory damages is not a necessary prerequisite to an award of punitive damages. See Basista v. Weir, 340 F.2d 74, 88 (3rd Cir. 1965).

Appellants contend that Robert Thomas, Deputy Los Angeles City Attorney, should have been permitted to testify in regard to communications he had with Deputy Sheriff Currin for the purpose of impeachment.

Since we are of the opinion that the appellants should be afforded a new trial, we believe the question of whether the communications between Deputy Sheriff Currin and the Deputy Los Angeles City Attorney, Robert Thomas, are privileged under the provisions of the California Evidence Code, § 1040(b)(2) should be considered here.

Criminal charges were brought against appellant Donald Gill as a result of the incident which is the subject of this lawsuit. In preparation for that criminal trial, Currin presented information to Thomas concerning his (Currin's) version of what happened in the Gill residence at the time of the arrest.

During the early part of the present action, Thomas was privately questioned by the appellants' trial counsel concerning the criminal case against Donald Gill. During that conversation, Thomas divulged to trial counsel for appellants the contents of information given by Currin in regard to what happened inside the Gill residence on the night in question.

Thomas was called by the appellants as a rebuttal witness and his testimony was offered to impeach the testimony of Currin as to prior inconsistent statements made by him to Thomas at the time of the criminal prosecution.

The appellees objected to Thomas testifying on the ground that any conversation between Thomas and Currin was privileged under Section 1040(b)(2) of the California Evidence Code. The pertinent portions of § 1040 are as follows:

"(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made."

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:"

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

█ It seems clear that before the privilege can be exercised, the public entity claiming that privilege must show the necessity for preserving the confidentiality of the information and that it outweighs the necessity of disclosure. The appellees did not present any evidence to the court on this issue. To the contrary, the record reveals that Mr. Thomas merely informed the court that the City Attorney's office wanted to exercise the privilege and that he was authorized by the city attorney to do so. At the time the privilege was exercised in the present action, all criminal proceedings against Donald Gill had been terminated favorably to him and no further prosecutions were pending. In these circumstances, it is difficult for this court to understand how or in what way the public interest would suffer by permitting Mr. Thomas to testify as to the alleged contradictory statements of defendants. It would seem that the public interest would suffer more if law enforcement officers were permitted to make contradictory statements without fear of impeachment.

In applying § 1040(b)(2) to the communication in question, the appellees are claiming that unless law enforcement officers can be assured that discussions and conferences held with a prosecuting attorney are confidential, they will be *justifiably* hesitant to fully disclose all the facts relevant to the prosecution of the crime involved. We do not believe that § 1040 is intended to provide a shield behind which *law enforcement personnel* may seek refuge for possible wrongdoings. It seems reasonable that law enforcement officers are obligated to reveal the *true and complete* facts of any investigation to those responsible without any special immunity. It must also be remembered that the privilege was only exercised in this civil suit and any public interest requiring the confidentiality of the information appears to be completely lacking.

It is impossible for this court to determine on the record before us what the authority of Mr. Thomas was at the time he freely volunteered the information to appellants' counsel. If he had authority in the criminal case, it would seem that he would be in a position to authorize the release of this information as he did. He was fully aware of the reason for the inquiry and that the Gills were bringing the present action.

█ Upon the retrial of this case, the questions we have raised, concerning the use of the privilege under § 1040(b)(2), must be answered to determine if that privilege is proper in this case. On the record before us, we are of the opinion that the trial court erred in allowing the appellees to exercise the privilege without a proper foundation or justification for doing so.

Reversed and remanded.