Ben **ALLEN** et al., Appellants,

v.

**AMALGAMATED TRANSIT UNION LOCAL 788,** Appellee.

Nos. 76–1542 and 76–1551.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1977.

Decided May 9, 1977.

---

Burton Newman, Clayton, Mo., for Amalgamated Transit Union; William H. Bartley, Clayton, Mo., on brief.

Louis Gilden, St. Louis, Mo., for Ben Allen.

Lutz A. Prager, Office of Gen. Counsel, E. E. O. C., Washington, D. C., for amicus curiae, E. E. O. C.; Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel and Lutz A. Prager, Washington, D. C., on brief.

Before LAY and WEBSTER, Circuit Judges, and SMITH,* Senior District Judge.

LAY, Circuit Judge.

Plaintiffs Ben Allen and Aaron Rutlin, along with 13 other black members of the Amalgamated Transit Union Local 788 (Union), brought suit against the Union alleging racial discrimination under 42 U.S.C. §§ 1981, 1982, 1983 and 2000e et seq. Plaintiffs alleged that the Union failed to grant them seniority and other incidental rights guaranteed to them under various collective bargaining agreements. A second count alleged that the Union had breached its duty of fair representation under 29 U.S.C. § 185.[1]

The district court, the Honorable H. Kenneth Wangelin, found the defendant guilty of racial discrimination against the plaintiffs in violation of §§ 1981 and 2000e et seq., and ordered, *inter alia*: (1) that each plaintiff be awarded $1,000 punitive damages; (2) that defendant reimburse each plaintiff his $100 initiation fee plus interest thereon from the date of its payment; (3) that plaintiffs be awarded back pay as limited by a five-year statute of limitations, pending a report by special master; (4) that defendant grant Ben Allen and Aaron Rutlin seniority dating from the date of their employment with the Consolidated Service Car Company (CSC); (5) that all other plaintiffs were barred from any relief (including seniority rights) prior to five years from the date of the filing of the complaint (July 5, 1974) under Mo.Rev.Stat. § 516.120 (1969), and that their seniority date should be determined by supplemental order, pending a report from a special master concerning back pay; (6) that defendant pay plaintiffs' attorney a $300 fee; and (7) that defendant be permanently enjoined from any further racial discrimination against plaintiffs.

The Union has appealed the grant of injunctive relief, urging that the trial court erred in finding racial discrimination and in granting any relief to the plaintiffs. The plaintiffs have cross-appealed asserting that the district court erred in limiting remedial relief under the five-year statute of limitations, and in awarding an inadequate attorney fee. This court has jurisdiction to review the grant of the injunctive relief under 28 U.S.C. § 1292(a)(1). We affirm in part, and reverse in part.

*Facts.*

Prior to 1963 several independent companies, including CSC, operated transit facilities in the metropolitan St. Louis area. In 1959 a report prepared for the City of St. Louis and the County of St. Louis (Gilman Report) recommended that all of the companies involved in transit operations be consolidated in three phases: (1) establishment of an area-wide integrated transit system; (2) examination of rapid transit possibilities; and (3) completion of the plan by acquiring the CSC operation and replacing it with bus service. In 1963 fifteen transit companies (excluding CSC) merged into one corporation, Bi-State Development Agency (Bi-State). Bi-State was managed by Transit Services Corporation (TSC) which handled personnel matters, including negotiating collective bargaining agreements.

Most of the employees of the 15 merged companies belonged to various unions. The defendant, which represented about 75 per cent of the merged employees, campaigned so that all the merged employees became members of Local 788. Bi-State, through TSC, recognized the Union without a labor election.

To attract employees in this "organizational drive" the Union agreed to waive the $100 initiation fee for the merged employees. Since it was the policy of the Union to dovetail seniority for the years of prior employment of individuals who brought their work and equipment with them, it was

---

* Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. It is not clear whether the trial court has granted any affirmative relief under 29 U.S.C.

§ 185. In view of our holding under 42 U.S.C. §§ 1981 and 2000e et seq., we need not pass on the issues presented under the Labor Management Relations Act on this appeal.

No

agreed that the seniority of the merged employees would be dovetailed into the two Union seniority rosters (one for maintenance employees and one for drivers). In addition a section in the bargaining agreement provided:

> Seniority of each of the full-time operators covered by this Agreement shall be on a system basis. The years of service of each of the full-time operators with each of their predecessor transit companies shall be counted from date of last employment and given full credit in the seniority roster.

There is no evidence that either the waiver of the initiation fee or the dovetailing provision was presented to the Union "rank and file" membership for approval.

Two years later, in 1965, Bi-State purchased the certificates of convenience issued to CSC, and in November of that year it had the certificates revoked by the city. CSC was then liquidated. Bi-State, through TSC, gave priority in hiring to former CSC employees by waiving any age limitation, any written test and pre-employment investigation. CSC employees only had to appear at the Bi-State employment office, fill out a job application, and pass a physical exam to be employed, and Bi-State hired a total of 34 CSC employees (33 black drivers and 1 white maintenance man) in this manner. The drivers received approximately 30 days of training in areas of routes, transfers, making change and actual bus driving. Following a probationary period all CSC employees joined the Union. Each paid a $100 initiation fee and none was given seniority credit for his prior employment, i. e., seniority was "end-tailed."

The former CSC employees did not complain to Bi-State or the Union about alleged racial discrimination in their treatment as "new employees" in 1965 until at least three years later. They then filed complaints against both the Union and Bi-State with the NAACP and the Missouri Commission on Human Rights. Two, Ben Allen and Aaron Rutlin, eventually filed charges with the Equal Employment Opportunity Commission (EEOC) in March of 1971.

Between 1969 and 1974 Bi-State agreed to grant former CSC employees full seniority credit[2] for their employment with CSC, and paid them back vacation pay as if they had originally been credited for their years with CSC. The Union continued in its refusal to grant former CSC employees full Union seniority.[3] The Union president told the former CSC members that the matter of their seniority would have to be put to a vote before the "rank and file" Union membership. However, he refused to place the matter before the "rank and file," because such action might cost him his office at the next election.

In 1971, a motion was made at a Union meeting for full seniority rights for the former CSC employees. It was seconded, but not entertained by the Union president because of the charges filed by those employees still pending before the city, state and federal commissions.

On August 21, 1972, the EEOC issued a reasonable cause determination that the Union had engaged in unlawful employment practices in violation of Title VII by denying the charging parties (Ben Allen and Aaron Rutlin) their full seniority rights and by charging them the $100 initiation fee. The EEOC decision also stated that the Union made no valid attempt to set into motion the proper processes to obtain the seniority rights demanded by the charging parties.

On June 13, 1974, Ben Allen and Aaron Rutlin were issued notices of right to sue within 90 days. Joined by 13 other former CSC employees they filed this action against the Union on July 5, 1974.

*Discrimination.*

On appeal the Union challenges the district court's finding that it discriminated

---

**2.** Seniority for company purposes involved length of vacations, pension benefits, and some future employment benefits.

**3.** Seniority for Union purposes involved priority pick of system and division (which route he will drive), vacation time pick, and lay-off.

against plaintiffs in violation of §§ 1981 and 2000e et seq. It contends that it had legitimate business reasons for the differences in treatment of the employees involved in the 1963 merger and the plaintiff-employees involved in the purchase of CSC. It urges that CSC was not a transit company and therefore the provision of the bargaining agreements dealing with the grant of full seniority rights of the operators of predecessor transit companies was not applicable; that special training periods were necessary for the service car drivers; and that plaintiffs did not "bring their work and equipment with them" since CSC vehicles were not used by Bi-State. The Union also asserts that prior to the 1963 merger it represented approximately 75 per cent of the employees of the 15 merging transit companies and there existed a substantial continuity of interest to maintain that representation. In contrast it asserts there was no legal obligation for TSC to employ CSC drivers and no continuity of operations entitling the service car drivers to continuous service credit or Union seniority.

 The district court, in rejecting these arguments, found they did not rebut the prima facie case of discrimination.[4] We find this decision not clearly erroneous.

The Gilman Report recommendations clearly indicate that CSC was considered an integral part of the then existing transit system. Furthermore, although Bi-State did not continue to operate the CSC vehicles, after the 1965 purchase it added 172 daily round trip bus routes to its system and bought new buses. The district court found this was the equivalent of plaintiffs bringing their work and equipment with them. In addition, there is testimony that some of the smaller front engine and horizontally opposed engine buses used by other merged companies were not used by Bi-State, but that did not affect the treatment of drivers of those buses. Finally, there was evidence that the drivers involved in the 1963 merger also received 30 days of training.

As to the § 1981 claim, the evidence supports a finding that the black plaintiffs were unable to enforce a provision in the collective bargaining agreement which their white counterparts were able to enforce. We accordingly affirm the district court's finding of racial discrimination.

*Statute of Limitation.*

 We agree with the district court that the applicable statute of limitation governing plaintiffs' action under § 1981 is the five-year statute provided in Mo.Rev. Stat. § 516.120 (1969), for breach of written contracts, which is most analogous to the claim asserted here. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); and *Butler v. Teamsters Local 823*, 514 F.2d 442 (8th Cir. 1975). The Union urges that since the denial of seniority rights and the payment of the initiation fee took place in 1965, the statute bars plaintiffs' claims. However, the district court found that the denial of seniority rights was a continuing discrimination and that the statute had not run. We think this proposition too well-settled to require further discussion. *See Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Williams v. Norfolk & W. Ry. Co.*, 530 F.2d 539 (4th Cir. 1975); and *United States v. St. Louis-San Francisco Ry. Co.*, 464 F.2d 301 (8th Cir. 1972) (en banc), *cert. denied sub nom.*, *United Transp. Union v. United States*, 409 U.S. 1107, 93 S.Ct. 900, 34 L.Ed.2d 687 (1973).[5]

---

4. In actions under 42 U.S.C. § 2000e et seq., a showing of discriminatory impact suffices to establish a prima facie case of discrimination. *See Firefighters Institute for Racial Equality v. St. Louis*, 549 F.2d 506 (8th Cir., 1977). Once a racially adverse impact is demonstrated, the burden of proof shifts to the employer to prove the job relatedness of his practices. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

5. The Fourth Circuit has determined that a cause of action for denial of seniority credit was fully accrued at the original denial and time barred by the applicable statute of limitations. *Kennedy v. Wheeling-Pittsburg Steel Corp.*, 81 L.R.R.M. 2349 (4th Cir. 1972). That

The Union also contends that the payments of initiation fees were single, isolated acts and that the statute of limitations should bar any claim for repayment. Although we agree that the requirement of the fees is not a continuing wrong since it was not repeated, it was an integral part of the disparate treatment. We find restitution of the initiation fees to be harmonious with the spirit of remedial equitable relief sanctioned by Congress and approved by the Supreme Court in *Franks v. Bowman Transp. Co., Inc., supra.*

*Back Pay and Seniority.*

After finding that the statute of limitations did not bar the claims, the dis-

trict court found that it did become relevant in the granting of retroactive relief. The trial court limited the award of back pay to five years and granted full seniority rights only to Ben Allen and Aaron Rutlin. We have no difficulty with the court's application of the statute to back pay, but find the court erred in limiting the retroactive seniority rights of the other 13 named plaintiffs.[6]

The injunctive relief sought by plaintiffs is essentially equitable in nature. It seeks to restore to plaintiffs the contractual rights discriminatorily denied to them.[7] Under the circumstances it is settled that a statute of limitations is not applicable and the Union has not pleaded laches. *See*

case is distinguishable because it involved a lay-off situation. In *Richard v. McDonnell Douglas Corp.*, 469 F.2d 1249 (8th Cir. 1972), this court cites a Harvard Law Review article which states that "if an act originating in the past operates to discriminate against the complainant at the present time, there is a continuous violation." *Developments in the Law— Employment Discrimination and Title VII of the Civil Rights Act of 1964*, 84 Harv.L.Rev. 1109, 1210 (1971). The article suggests that "[t]his might be taken to mean that practically any discrimination is continuing *at least as long as the employment relationship is maintained.*" *Id.* at 1211 (emphasis added).

Recently the Seventh Circuit found that even where there has been a break in the employment nexus, under certain circumstances present practices may rejuvenate earlier discrimination. *See Evans v. United Air Lines, Inc.*, 534 F.2d 1247 (7th Cir. 1976), *cert. granted* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976).

6. Under § 2000e–5(g) back pay is limited to two years from the time of filing a charge with the Equal Employment Opportunities Commission. However, under § 1981 the Missouri five-year statute, Mo.Rev.Stat. § 516.120 (1969), is applicable, and *it grants greater relief*. It is questionable whether the issue of back pay remains sufficient for the appointment of a master. The Union urges that there is no award due since the company has restored full seniority rights, has made complete restitution as to vacation time, and there were no lay-offs. Upon remand, the trial court should inquire into this question. It may be that the issue of back pay is completely mooted.

7. Relief limited to five years would be meaningless. As Mr. Justice Brennan observed in *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 96 S.Ct. 1251 (1976):

Adequate relief may well be denied in the absence of a seniority remedy slotting the

victim in that position in the seniority system that would have been his had he been hired at the time of his application. It can hardly be questioned that ordinarily such relief will be necessary to achieve the "make-whole" purposes of the Act.

*Id.* at 764–66, 96 S.Ct. at 1265.

Mr. Justice Brennan made the following observations on seniority:

Seniority systems and the entitlements conferred by credits earned thereunder are of vast and increasing importance in the economic employment system of this Nation. S. Slichter, J. Healy, and E. Livernash, The Impact of Collective Bargaining on Management, 104–115 (1960). Seniority principles are increasingly used to allocate entitlements to scarce benefits among competing employees ("competitive status" seniority) and to compute noncompetitive benefits earned under the contract of employment ("benefit" seniority). *Ibid.* We have already said about "competitive status" seniority that it "has become of overriding importance, and one of its major functions is to determine who gets or who keeps an available job." *Humphrey v. Moore*, 375 U.S. 335, 346–347, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). "More than any other provision of the collective [bargaining] agreement . . . seniority affects the economic security of the individual employee covered by its terms." Aaron, Reflections on the Legal Nature and Enforceability of Seniority Rights, 75 Harv.L.Rev. 1532, 1535 (1962). "Competitive status" seniority also often plays a broader role in modern employment systems, particularly systems operated under collective-bargaining agreements:

"Included among the benefits, options, and safeguards affected by competitive status seniority, are not only promotion and layoff, but also transfer, demotion, rest days, shift assignments, prerogative in scheduling vacation, order of layoff, possibilities of lateral

*Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).[8]

In *Franks v. Bowman Transp. Co., Inc., supra,* Mr. Justice Brennan observed:

[O]ne of the central purposes of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." To effectuate this "make-whole" objective, Congress in § 706(g) vested broad equitable discretion in the federal courts to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay . . ., or any other relief as the court deems appropriate." . . . "The provisions of [Section 706(g)] are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. . . . *[T]he Act is intended to make the victims of unlawful employment discrimination whole and . . . the attainment of this objective . . . requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination."* This is emphatic confirmation that federal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution, making

whole insofar as possible the victims of racial discrimination in hiring.

424 U.S. at 763–64, 96 S.Ct. at 1264 (citations and footnotes omitted) (emphasis added).

Thus we find the court erred in not granting full restitution of seniority to all plaintiffs under § 1981.

■ We reach the same conclusion under § 2000e et seq. The district court denied Title VII relief to all plaintiffs except Ben Allen and Aaron Rutlin, since only they had filed charges with the EEOC and the complaint did not allege a class action or seek class relief. It is settled that a suit by a named member of a class in a class action may seek relief for the entire class without the necessity of other class members pursuing their administrative remedy with the EEOC. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362 (1975); *Romasanta v. United Airlines, Inc.,* 537 F.2d 915, 918 (7th Cir. 1976); *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 478 F.2d 979, 985 n. 11 (1973); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 718–20 (7th Cir. 1969); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir. 1968). In the instant case, although no class action was filed, 13 additional plaintiffs alleged facts demonstrating they were similarly situated and had received the same discriminatory treatment as Ben Allen and Aaron Rutlin. Under such circumstances, particularly where the discrimination is continuing

transfer to avoid layoff, "bumping" possibilities in the face of layoff, order of recall, training opportunities, working conditions, length of layoff endured without reducing seniority, length of layoff recall rights will withstand, overtime opportunities, parking privileges, and, in one plant, a preferred place in the punch-out line." Stacy, 28 Vand. L.Rev., at 490 (footnotes omitted).
*Id.* at 766–67, 96 S.Ct. at 1265.

8. The Supreme Court observed in *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582 (1946):

We have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress. When Congress leaves to the federal courts the formulation of remedial details, it can hardly

expect them to break with historic principles of equity in the enforcement of federally-created equitable rights.

Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief. Such statutes have been drawn upon by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair.

. . . . .

Equity eschews mechanical rules; it depends on flexibility. . . . And so, a suit in equity may lie though a comparable cause of action at law would be barred.
*Id.* at 395–96, 66 S.Ct. at 584.

it would be nonsensical to require each of the plaintiffs to individually file administrative charges with the EEOC.[9] Defendants have in no way been placed in jeopardy.

In *Local 179, United Textile Wkrs. v. Federal Paper Stock Co.*, 461 F.2d 849 (8th Cir. 1972), this court held that the filing of an EEOC complaint by a union on behalf of its members satisfied the exhaustion requirement. We allowed the employees themselves to file suit. The court concluded that there had been no attempt to bypass the EEOC, and that it was, therefore, insignificant that the Union had filed the administrative charges rather than the employees themselves. This reasoning is also applicable here.

*Punitive Damages.*

■ The district court awarded each plaintiff $1,000 punitive damages. On appeal the Union urges that punitive damages do not lie under § 1981. We disagree. ·See *Johnson v. Railway Express Agency, Inc.*, supra ; and *Claiborne v. Illinois Cent. R. R.*, 401 F.Supp. 1022 (E.D.La.1975). *See also* Comment, *Implying Punitive Damages in Employment Discrimination Cases*, 9 Harv. Civ.Lib.—Civ.Rights L.Rev. 325, 345–51 (1974).

The Supreme Court, in *Johnson*, recognized that some district courts have denied both compensatory and punitive damages in title VII suits. However, contrary to the Union's argument here, the Supreme Court expressly observed that Title VII remedies are coextensive with the individual rights under 42 U.S.C. § 1981, and are separate, distinct and independent. Mr. Justice Blackmun observed:

An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages. See, e. g., *Caperci v. Huntoon*, 397 F.2d 799 (CA 1), cert. denied, 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968); *Mansell v. Saunders*, 372 F.2d 573 (CA 5 1967).

421 U.S. at 460, 95 S.Ct. at 1720.

The Union now urges that *Caperci* and *Mansell* were § 1983 suits, not § 1981 suits, and that the above language of *Johnson* is dictum and need not be followed. The Union further urges that no other appellate decision has allowed a punitive award in a § 1981 suit.

Section 1981 does not expressly provide a remedy for interference with the right to make and enforce contracts. In this deficiency it is like 42 U.S.C. § 1982. However, it has been determined that equitable relief and compensatory damages are available under § 1982 through 28 U.S.C. § 1343(4) and 42 U.S.C. § 1988. *See Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); and *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Furthermore, punitive damages have been awarded under § 1982. *See, e. g., Seaton v. Sky Realty Co.*,

**9.** The reasoning of Judge Bell (now Attorney General Bell) is as applicable to this situation as it is to a suit filed as a class action:

It would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful.

*Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968).

Aside from the practicality in allowing plaintiffs to be made whole without further administrative process, Judge Bell demonstrates the legal justification by observing:

Racial discrimination is by definition class discrimination, and to require a multiplicity of separate, identical charges before the EEOC, filed against the same employer, as a prerequisite to relief through resort to the court would tend to frustrate our system of justice and order.

*Id.* at 499.

*Oatis* involved a class suit, but it also involved the joinder of three members of the class as co-plaintiffs. Judge Bell observed:

[I]t is not necessary that members of the class bring a charge with the EEOC as a prerequisite to joining as co-plaintiffs in the litigation. It is sufficient that they are in a class and assert the same or some of the issues.

*Id.*

*See also Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969).

491 F.2d 634 (7th Cir. 1974). Under the circumstances we see no reason for denying a punitive award under § 1981.

■ The Union contends that if punitive damages are allowable in a § 1981 suit, this is not an appropriate case for such an award. Again we must disagree.

■ In the instant case there is substantial evidence that the Union consistently obstructed plaintiffs' efforts regarding their proper seniority rights. Plaintiffs registered numerous complaints as to their disparate treatment with the defendant Union, Bi-State and various state and federal agencies. In 1969 the Union president refused to present plaintiffs' demand for seniority to the membership, although the plaintiffs requested such action. In 1971, a motion made at a Union meeting for seniority rights for plaintiffs was seconded, but not entertained because of race charges pending before city, state and federal commissions. Bi-State eventually agreed to grant plaintiffs full seniority credit for their years of work for CSC for purposes of vacation benefits, pension benefits and other future employment benefits. The Union continued its refusal to consider the seniority rights of the plaintiffs. These facts are sufficient to sustain the district court's award of punitive damages. *See, e. g., Gill v. Manuel*, 488 F.2d 799, 801 (9th Cir. 1973).[10]

*Attorney Fees.*

The district court held that since 42 U.S.C. § 2000e et seq., was alleged as a jurisdictional base and the plaintiffs prevailed, it would award plaintiffs' attorney a fee of $300 as compensation.[11] The plaintiffs challenge the amount of the award on cross-appeal. We find the amount grossly inadequate.

The guidelines for attorney's fees set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), have been approved by this court. *See Doe v. Poelker*, 515 F.2d 541, 548 (8th Cir. 1975), *cert. granted*, 428 U.S. 909, 96 S.Ct. 3220, 49 L.Ed.2d 1216 (1976). *See also Firefighters Institute for Racial Equality v. St. Louis, supra.* The Senate found that those guidelines were correctly applied in *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 66 F.R.D. 483 (W.D.N.C.1975) ($65 per hour); *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974) ($50 per hour); and *Davis v. County of Los Angeles*, 8 Empl.Prac.Dec. ¶ 9444 (C.D.Cal.1974) ($84 per hour). S.Rep. No.94–1011, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin.News 1976, p. 5908. The $4.54 per hour awarded here is obviously short of those standards.

■ The plaintiff also asks for attorney fees for this appeal. We have allowed such fees in *Firefighters Institute for Racial Equality v. St. Louis, supra* ; and *Reed v. Arlington Hotel Co., Inc.*, 476 F.2d 721 (8th Cir.), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973).

On remand the district court should reconsider the attorney fee award for the time spent prior to the filing of the notice of appeal. Additionally, we direct counsel to file an affidavit in this court as to time spent in processing the appeal in order that an allowance of reasonable attorney fees can be made for the appeal.

*Conclusion.*

We affirm the district court's finding of racial discrimination, the awards of punitive

---

10. In *Gill v. Manuel*, 488 F.2d 799 (9th Cir. 1973), the court observed:

The questions in regard to the credibility of the witnesses and the determination of whether the facts presented were sufficient for an award of punitive damages are issues reserved for determination by the trier of fact.

*Id.* at 801.

11. The prevailing party in a Title VII action is entitled to an award of "a reasonable attorney's fee." 42 U.S.C. § 2000e–5(k). The same result could be obtained under 42 U.S.C. § 1988 which allows "a reasonable attorney's fee as part of the costs" to the prevailing party, other than the United States, in suits under 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986.

damages and back pay,[12] and restitution of the initiation fees. We remand to the district court and direct that defendants grant plaintiffs full seniority on the Union seniority roster based upon their date of employment with CSC; that the court reconsider and award a reasonable attorney fee, and grant any other relief the court finds not inconsistent with this opinion.

12. Depending upon the claims of the individual plaintiffs, which now should be specifically pleaded in the district court, a master may not be needed. See n. 6, supra. It is doubtful that any factual dispute exists as to back pay, but any back pay award is, of course, limited by the five-year statute of limitations.