Mary L. BOWERS, Plaintiff,

v.

KRAFT FOODS CORP., Defendant.

No. 77–1277C(1).

United States District Court, E. D. Missouri, E. D.

March 22, 1979.

Raymond Howard, Jr., Howard, Singer & Meehan, St. Louis, Mo., for plaintiff.

Edwin L. Noel, Walter M. Clark, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for defendant.

MEREDITH, Chief Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was tried to the Court. The Court has been duly advised by testimony,

exhibits, and briefs. The Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff Mary L. Bowers is a black female who was employed by the defendant on August 31, 1970. At the time of trial plaintiff was still employed by defendant.

2. Defendant Kraft Foods Corporation is a division of Kraft, Inc., (hereinafter Kraft) which is organized under the Delaware Corporation laws with its principal place of business in the State of Illinois. Kraft is an employer engaged in an industry affecting commerce and employs at least 25 persons.

3. Plaintiff testified that she applied for a job as an assistant secretary and did not discover until a year and a half later that she was classified as a junior clerk. At the time plaintiff was employed by the St. Louis office her rate of pay was $400.00 per month.

4. Prior to being employed by the defendant, plaintiff had no significant clerical experience. She had held part-time jobs and summer jobs while she attended school. Plaintiff could not use a comptometer and her duties consisted of simple, routine clerical tasks at the time of her employment.

5. The employee hired immediately prior to the plaintiff, Sue Pritchard, a white female, received the same starting salary as that received by the plaintiff, $400.00 per month.

6. One of the plaintiff's complaints is that she should have been started at a higher salary, and if she had been started at a higher salary she calculates her damages to be approximately $11,000.00. She also asks for attorneys fees. This Court finds no creditable evidence to show that there was any discrimination in the employment of the plaintiff, and considering her qualifications and past experience, she was adequately paid for her starting salary.

7. In September of 1970 the defendant paid $376.32 to the National Business Center, an employment agency, for plaintiff's referral fee.

8. Sue Pritchard, the white female who was hired on July 20, 1970, was initially hired for the position of a comptometer operator. Her duties required Ms. Pritchard to perform analytical and computational duties which are included in the classification of an intermediate clerk. The plaintiff's initial position did not require her to perform these tasks and she was not qualified to perform them. Despite Ms. Pritchard's greater qualifications and responsibilities, she received the same salary as the plaintiff, $400.00 per month.

9. Shortly after the plaintiff was hired by defendant she requested her immediate supervisor for one week's leave of absence without pay so that she could get married and take a wedding trip. This was granted to the plaintiff.

10. When plaintiff first began to work for the defendant she received some of her work assignments from Patricia Post, a white female who was classified as an intermediate clerk. Ms. Post served as a secretary to Mr. Charles White, the St. Louis District Sales Manager for defendant. Ms. Post turned some of the typing over to the plaintiff. It was soon discovered that the plaintiff and Ms. Post did not get along together and plaintiff complained of the manner in which she was being treated by Ms. Post. When this complaint was received by the plaintiff's supervisors the plaintiff no longer received any assignments directly from Ms. Post.

11. The plaintiff claims that she should have received a tuition refund in September of 1970. The Court finds that she actually received a refund in January, 1973, and that she had not requested it prior to that time.

12. Plaintiff also complains that she was not permitted to use the company telephone for personal telephone calls but that white females were able to do this. She also claims that she was harassed by her co-workers and her supervisors. The Court finds no creditable evidence to support these allegations except plaintiff's own testimony. As a matter of fact, two black

females who are in the employment of defendant at the St. Louis office, Ms. Janice Creagh and Ms. Otera Sanford, both testified that they worked for the same supervisors as the plaintiff and that in all cases they have been treated with dignity and respect and they find no discrimination either in hiring or promotion at the St. Louis plant.

13. The plaintiff did not introduce evidence from a single employee of the defendant, except her own testimony, to support her claims of discriminatory practices against blacks. In addition to the black employees who testified in favor of the defendant, the defendant also introduced evidence that no complaint had ever been filed against the company with the EEOC or the Missouri Commission on Human Rights except the complaint filed by the plaintiff. The defendant also showed evidence that it is their policy, not only in the St. Louis branch but elsewhere in the company, that they have an affirmative action program to hire minorities and females and that the percentage of blacks employed in the St. Louis Division equals the percentage of blacks in the St. Louis work area.

14. Plaintiff complains that she should have received her first salary increase sooner than she did. The facts are that in 1971 the government imposed a temporary wage freeze and that plaintiff received a promotion some 17 months after she was employed. The evidence shows that during this same period of time no white co-employee received any salary increase more quickly than the plaintiff. Of the white co-employees, three others went 17 months without a salary increase, one went 18 months, two went 20 months, one went 21 months, and one went 22 months. This conclusively demonstrates that plaintiff was not treated in any respect differently than white co-employees.

15. Plaintiff testified that she received her first salary increase only because she had made a complaint to the National Association for the Advancement of Colored People. The defendant's District Sales Manager, Charles White, testified that he had received a visit from an NAACP official but the NAACP official did not even mention plaintiff's name to him and that plaintiff's salary increase was not in any way related to this visit from the official.

16. Plaintiff also alleges that during 1972 the defendant hired two white females for the position of intermediate clerk while the plaintiff was still classified as a junior clerk. Both of these employees were hired to operate a comptometer and to perform analytical and computational tasks which the plaintiff did not perform and was not capable of performing. One of these employees, Ms. Schulte, had 23 years prior experience as a branch manager and instructor of a comptometer school; the other employee, Ms. Gan, had 11 years prior experience as a comptometer operator. There is no basis for the plaintiff's complaint that the hiring of these two employees at a higher grade was in any way racially motivated.

17. On July 16, 1973, the plaintiff was promoted to the position of intermediate clerk. The plaintiff alleges that her promotion to intermediate clerk was a result of her filing a complaint with the EEOC on February 12, 1973. The facts are that plaintiff's promotion was requested by the plaintiff's immediate supervisor in December of 1972 but was not approved in defendant's personnel office in Chicago, Illinois, until April 26, 1973. Plaintiff's promotion was not in any way related to her complaint to the EEOC but because of the fact that she had begun to assume greater job responsibilities.

18. On February 9, 1973, plaintiff's supervisor discussed with the plaintiff her overall job performance and was critical of the manner in which she performed her duties. Three days later the plaintiff complained to the EEOC. This Court is of the opinion that her complaint was based on plaintiff's desire to punish her immediate supervisor for criticizing her work. The Court finds that her supervisor had ample reason to be critical of plaintiff's performance. Plaintiff's attendance record is not satisfactory. She has averaged approxi-

mately 10 absent days a year excluding absences of more than four days as a result of illness. The average for the office as a whole is slightly less than three days a year. Plaintiff's work habits are bad; she is capable of performing better work than she actually does but her attitude is not satisfactory.

19. Plaintiff was employed on August 31, 1970. Her wage increases are as follows:

| Effective Date of Increase | Salary |
| --- | --- |
| January 17, 1972 | $435 |
| November 6, 1972 | $475 |
| July 16, 1973 | $515 |
| May 20, 1974 | $560 |
| July 29, 1974 | $585 |
| June 30, 1975 | $625 |
| October 4, 1976 | $675 |
| December 19, 1977 | $735 |
| September 25, 1978 | $800 |

The Court finds that these promotions and salary increases are entirely fair to the plaintiff considering her ability and her employment record. There is no evidence of any substantial nature to show that she was ever denied a promotion or an increase in salary because of her race.

20. Plaintiff's salary at the time of trial was $800.00 per month. She stated that she should be paid comparably to a Ms. Bell, a co-employee who has 12 years' seniority which is four years more than the plaintiff. The record discloses that plaintiff is receiving only $5.00 per month less than Ms. Bell even though Ms. Bell has more seniority and in spite of the fact that plaintiff's job performance has been far less than satisfactory.

21. Plaintiff filed her initial lawsuit against the defendant on May 6, 1976, as a class action. This case was dismissed without prejudice on the eve of trial and was refiled on December 6, 1977. Defendant's counsel has requested that his attorney's fees of $14,500 for 242.4 hours of work be assessed as costs against the plaintiff. Plaintiff's counsel has requested the Court to assess his attorney's fees of $13,125 for 134 hours of work against the defendant. This Court is of the opinion that the plaintiff has no foundation in fact for her lawsuit and that this is a frivolous lawsuit maliciously filed. The Court will award attorney's fees to the defendant and against the plaintiff in the sum of $5,000. While the criteria necessary for awarding of attorney's fees have been examined and the Court finds that $14,500 which the defendant has requested is not an unreasonable fee, nevertheless, in view of the type of case and in view of the fact that it will be assessed against the plaintiff, this amount will be reduced to $5,000. *See Firefighters Institute v. City of St. Louis, Mo.,* 588 F.2d 235 (8th Cir. 1978); *Allen v. Amalgamated Transit Union, Local 788,* 554 F.2d 876 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

## CONCLUSIONS OF LAW

1. Plaintiff brought this lawsuit in two counts, Count I under the provisions of 42 U.S.C. § 2000e. This was dismissed because it was not brought within 90 days after plaintiff received her right to sue letter from the EEOC. *Hinton v. CPC International, Inc.,* 520 F.2d 1312 (8th Cir. 1975). Count II alleges jurisdiction under 42 U.S.C. § 1981. This Court has jurisdiction under that section pursuant to 28 U.S.C. §§ 1331 and 1343(4).

2. This Court finds that the plaintiff has not proved a *prima facie* case and that defendant has convincingly demonstrated that the plaintiff's work performance, her attitude, and her work record were not satisfactory. The defendant has successfully rebutted any allegations of the plaintiff.

3. In view of the record in this case, the Court will find a judgment in favor of the defendant and against the plaintiff and will assess attorney's fees against the plaintiff and dismiss her complaint with prejudice.