Johnny KELLEY, Plaintiff,

v.

**HARVEST FOODS, INC., Defendant.**

**Civ. No. LR–C–90–876.**

United States District Court,
E.D. Arkansas, W.D.

Jan. 14, 1992.

---

Morgan E. Welch and Loral Ashton Adcock, Welch, Mathis & Adcock, Little Rock, Ark., for plaintiff.

M. Tim Boe and Patricia Heretage, Rose Law Firm, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Pending before the Court is the motion of Harvest Foods, Inc., (Harvest) asking the Court to reconsider its order of April 29, 1991, denying Harvest's motion to dismiss plaintiff's complaint for failure to invoke administrative proceeding with the Equal Employment Opportunity Commission (EEOC) before instituting the instant action alleging racial discrimination in an employment decision adversely affecting plaintiff, and affording plaintiff leave to intervene in *Earnest Beasley v. Harvest Foods, Inc.*, LR–C–90–701 (Beasley), a case currently pending in this court.

The essence of the holding in the April 29, 1991, order was to allow plaintiff to invoke the "single-filing rule" and pursue his Title VII claim although plaintiff had not filed a separate EEOC charge.

The thrust of Harvest's argument for reconsideration may be briefly stated as: (1) the "single-filing rule" is inapplicable here because this action and *Beasley* are not class actions and do not involve multiple plaintiffs with similar claims; and (2) that EEOC was not afforded an opportunity in *Beasley* to promote or urge conciliation between the parties because "Beasley prematurely requested his right to sue notice before the EEOC reached a determination with respect to the alleged discrimination".[1] Accordingly, argues Harvest, neither of the purposes of the "single-filing rule" exists in this action.

After carefully considering the presentations of counsel, the Court denies Harvest's motion for reconsideration for the reasons discussed hereinafter.

## I.

### THE SINGLE–FILING RULE

In discussing the applicability of the "single-filing rule" the court in *Crawford v. United States Steel Corp.*, 660 F.2d 663 (5th Cir.1981) made the following observation.

[In] a multiple-plaintiff, nonclass action suit, if one plaintiff has filed a timely EEOC complaint as to that plaintiff's individual claim, then co-plaintiff with individual claims arising out of similar dis-

---

1. Beasley filed his administrative complaint with EEOC on May 29, 1990. At the request of Beasley, EEOC granted Beasley's right-to-sue letter on July 22, 1990, approximately thirty-three days after lodging his complaint with EEOC.

criminatory treatment *in the same time frame* need not have satisfied the filing requirement. (Emphasis added).

In *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876 (8th Cir.), *cert. denied* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977), the Court stated:

In the instant case, although no class-action was filed, 13 additional plaintiffs alleged facts demonstrating they were similarly situated and had received the same discriminatory treatment as Ben Allen and Aaron Putlin. *Under such circumstances, particularly where the discrimination is continuing,* it would be nonsensical to require each of the plaintiffs to individually file administrative charges with EEOC. Defendants have in no way been placed in jeopardy. (Emphasis supplied)

In *Zuckerstein, et al. v. Argonne Nat. Laboratory,* 663 F.Supp. 569 at 574 (N.D.Ill.1987) the court commented as follows:

The appellate courts that have accepted the single-filing rule believe that such a rule effectuates the policies of Title VII. We agree. We therefore hold that *under appropriate circumstances the single-filing rule may be invoked by plaintiffs who have not complied with the procedural filing requirements of Title VII.* (Emphasis supplied).

In identifying or characterizing the circumstances warranting the invocation of the "single-filing rule", the court in *Zuckerstein v. Argonne Nat. Laboratory, supra,* stated:

Two factors must be present for non-complying plaintiffs to invoke the single-filing rule. First, at least one complying plaintiff must be a party to the suit....

. . . . .

[S]econd ... plaintiff's claim "must have arisen out of similar discriminatory treatment in the same time frame."

The court in *Zuckerstein,* also observed that a factual question in the single-filing rule is not whether a party's claims are "identical" to those of timely-filed co-plaintiff, but whether there is sufficient similari-ty between claims so that application of the rule will not frustrate policies behind Title VII. See also, *Lange v. Cigna Individual Financial Services Company,* 766 F.Supp. 1001 (D.Kan.1991). (Applying the single-filing rule, the court held that plaintiff Lange had met the requirements of the rule because her claims were substantially similar to those of the complying plaintiff.)

This Court is of the view that the central question for resolution is whether Beasley's claims registered in his EEOC complaint, which defendant has not challenged as to timeliness, are so similar to the claims of plaintiff in the instant action, that excusing the filing of an EEOC complaint on the part of plaintiff, Kelley, will not frustrate or compromise the policies in support of Title VII.

■ First, it appears to be generally recognized that the overall objectives in requiring a plaintiff to invoke the procedural requirements of Title VII before initiating court action are (1) to afford EEOC an opportunity to promote conciliation of the controversy between the parties, and (2) to afford "prompt notice to the employer" of the purported Title VII violation. *Zipes v. Transworld Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

Section 1601.28(a)(2) of Procedural Regulations of The Equal Employment Opportunity Commission (See: 29 C.F.R., Subtitle B, Ch. XIV, Part 1601 and Title 42 C.F.R. § 1601.28(a)(2)) provides:

(2) When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued, and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, *the Commission may issue such notice ..., at any time prior to the expiration of 180 days from the date of filing the charge with the Commission;* provided, that the District Director, the Area Director, the Local Director, the Program Director, Office of Program Operations or upon delegation,

the Director of Systemic Programs, Office of Program operations or the Directors, Field Management Programs, Office of Program Operations *has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge....*[2] (Emphasis supplied)

The evidence reflects that Beasley was discharged on February 14, 1990, was reinstated and given a 90–day suspension on May 4, 1990. However, on May 29, 1990, Beasley filed his EEOC complaint with the Commission. On or about July 22, 1990, Beasley requested and received his right to sue letter. Beasley instituted his court action on October 1, 1990.

It is plain that EEOC may issue a right to sue notice, upon request, "at any time prior to the expiration of 180 days from the date of filing the charge with the Commission ... [when] it has been determined it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge ...".

The Court is not persuaded Beasley's request for the right to sue notice some thirty-three days after the filing of his administrative complaint frustrated either the policies, the administrative procedure, or EEOC to implement its Title VII responsibilities. It must be remembered that the decision to grant the request for the right to sue letter was solely a decision for the Commission to make after making relevant findings. There is a general awareness that because of the huge backlog of pending actions before the Commission, it is not uncommon for complaints to remain idle and untouched for years. In granting Beasley's request, the Commission not only avoided the doctrine of laches from being asserted against plaintiff's claims, but any unfair prejudice to Harvest in preparing its case or defense as well.

But most importantly and dispositive is the fact that the Commission has the discretion to issue a right to sue letter under certain circumstances prior to the expiration of 180 days after receipt of the complaints. Significantly, Beasley's administrative complaint not only alerted the EEOC of the alleged continuing discriminatory conduct confronting minority employees, but Harvest as well.

Moreover, it must be remembered that following Beasley's discharge, Harvest and Beasley entered into "conciliation" efforts, without success, ultimately resulting in Beasley filing a EEOC complaint. Indeed, Harvest was knowledgeable of Beasley's claims which characterized the discriminatory conduct in broad and continuing terms relative to promotion opportunities as well as the assignment of jobs to black employees throughout the working area.

## SIMILARITY OF THE CLAIMS

### II.

The Court is of the view that the claims of Beasley set forth in his EEOC complaint and plaintiff's claims registered in his complaint in this case are substantially similar. Stated differently, the alleged claims asserted by both Beasley and plaintiff herein arise out of similar discriminatory treatment and within the same time frame.

The following are a description of Beasley's claims:

1. Race was designated as the cause of the discriminatory conduct engaged in by Harvest Foods, Inc.

2. That he (Beasley) was discharged on February 14, 1990, the date the discriminatory action took place.

3. On May 14, 1990, "I was reinstated with full seniority and given a 90–day suspension without pay. During my sus-

---

**2.** Section 1601.28(a)(1) of the procedural Regulations of EEOC provides that the Commission *shall* promptly issue a right to sue notice at any time after the expiration of one hundred eighty (180) days from the date of filing of the charge upon request.

Section 1601.28(a)(3) provides:
Issuance of a notice of right to sue shall terminate further proceeding of any charge not a Commissioner charge....

pension, I was denied two supervisor's positions."

4. "I feel I was *discharged*, ultimately *suspended* and *denied positions* because ... [of] race, black ... and white employees are not treated in this manner."[3] (Emphasis added).

Kelley's employment was terminated February 23, 1990.[4]

Kelley's complaint in this Court alleges the following, in material part:

1. "Harvest Foods, Inc. discriminated against Johnny Kelley because of his race, black."

2. "Kelley was harassed and discriminated against in the terms and conditions of his employment and his promotional opportunities even though his performance of duties and his seniority status were in excess of similarly situated white employees ... such treatment is predicated upon racially discriminatory grounds ...".

3. The plaintiff was terminated after one year from the date of his injury despite a pattern and practice of allowing similarly situated younger and/or white employees to return to work and in effect tolling the one year period. This plaintiff's termination was pretextual.

4. The denial of promotional opportunities and excessive duties and responsibilities placed on the plaintiff from time to time were the product of discriminatory and retaliatory acts by defendant.[5]

5. The February 23, 1990, termination of the plaintiff was approximately two and one-half years from the full vesting of his pension benefits. The plaintiff would have been fully vested on September 12, 1992.

6. Harvest Foods, Inc. has continued a pattern and practice of retiring, firing or forcing resignation of black employees and replacing them with white employees.

7. The plaintiff and other blacks have repeatedly been subjected to different terms and conditions of employment than those that apply to whites similarly situated.

8. Black workers, including the plaintiff, are assigned more time consuming tasks than are white workers which provides misleading performance results. Performance results and seniority status are supposed to be the basis for promotion.

9. The defendant has intentionally withheld notice of promotion openings and secretly informed whites with less qualifications than the plaintiff allowing them to fill the positions. When the openings are made known to the plaintiff and other blacks, the positions are usually already filled by white employees.

10. That Harvest and its predecessor, Safeway, Inc., have a history of discriminating against black employees.

11. "Black and white workers hired as 'temporary or casual laborers' who are similarly situated, are treated differently for purposes of promotion to full time status."

█ In conclusion, this Court is of the view that because of the broad scope of the grievance registered by Beasley in his EEOC complaint articulating a pattern of continuing discriminatory conduct, as opposed to an isolated instance, both EEOC and Harvest were alerted to the nature and extent of the claims of Beasley that allegedly extended throughout the workplace. Indeed, Harvest attempted to conciliate the matter, but without success. To require Kelley to institute an administrative proceeding before EEOC encompassing essentially the same claims asserted by Beasley would not only be useless, but ineffectual as well. As the Court of Appeals observed in *Allen v. Amalgamated Transit Union Local 788, supra:*

---

3. Beasley alleged, in his EEOC complaint, that on "August 24, 1970, I was employed as a warehouseman. I later became an order filler." An order filler, according to Kelley's complaint, primarily involves counting grocery items and documenting the findings.

4. Kelley was hired on September 12, 1972, as a checker and later became an order filler.

5. Inasmuch as Beasley did not assert "retaliation" as a claim in his EEOC complaint, Kelley may not assert this claim here.

*Under such circumstances, particularly where the discrimination is continuing,* it would be nonsensical to require each of the plaintiffs to individually file administrative charges with EEOC. Defendants have in no way been placed in jeopardy. (Emphasis added)

Accordingly, defendant's motion for reconsideration is denied.

IT IS SO ORDERED.