Andrew J. THOMURE;  Joe
Williams, Appellees,

v.

PHILLIPS FURNITURE COMPANY;
Tom E. Phillips, Sr.;  Tom E.
Phillips, Jr., Appellants.

Andrew J. THOMURE;  Joe
Williams, Appellants,

v.

PHILLIPS FURNITURE COMPANY;
Tom E. Phillips, Sr.;  Tom E.
Phillips, Jr., Appellees.

Nos. 93–2916, 93–2917.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1994.

Decided July 29, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 12, 1994.*

---

* McMillian, Circuit Judge, would grant the sugges-    tion for rehearing en banc.

Francis E. Pennington, Clayton, MO, argued (Francis E. Pennington, III and Joe D. Jacobson, St. Louis, MO, on the brief), for appellants/cross-appellees.

John D. Lynn, St. Louis, MO, argued (Michael J. Hoare and John D. Lynn, St. Louis, MO, on the brief), for appellees/cross-appellants.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

BOWMAN, Circuit Judge.

Andrew "Jody" Thomure and Joe Williams sought actual and punitive damages and equitable relief under the Missouri Human Rights Act (MHRA) and the federal Age Discrimination in Employment Act (ADEA) in an action against Phillips Furniture Company, Tom Phillips Sr., and Tom Phillips Jr. (collectively, Phillips or the company). A magistrate judge, presiding over the case by consent of the parties, granted Phillips's motion for summary judgment on Williams's

claims, holding that Williams failed to file a timely charge with either the federal Equal Employment Opportunity Commission (EEOC) or the sister state agency, a prerequisite to suit. After Thomure's trial, the jury returned a verdict for Thomure for $23,880 in lost wages and benefits, $20,000 for mental anguish and emotional distress, and $20,000 in punitive damages, and found that the company's discrimination against Thomure because of his age was willful.

The court vacated the award of punitive damages, which had been granted under the MHRA, finding the award duplicative in view of the liquidated damages due Thomure under the ADEA because of the finding that Phillips acted willfully. The court also vacated the mental anguish and emotional distress damages because Thomure presented no medical evidence to support his claim. The court granted Phillips Sr. and Phillips Jr. judgment as a matter of law on the MHRA claims, holding that the Phillipses were not added as defendants within the MHRA's two-year statute of limitations. Thomure's back-pay award was increased to account for wages lost from the end of trial to entry of judgment and then was doubled for Phillips's willful actions, and the court ordered Thomure's wages increased prospectively. The court denied Thomure's request for an award of prejudgment interest. Attorney fees, reduced from the amount requested, were awarded to Thomure.

Phillips appeals, challenging, among other things, the court's failure to grant judgment as a matter of law, contending that the evidence does not support the jury verdict. On cross-appeal, Williams challenges the summary judgment entered against him and Thomure raises various other issues.

We reverse the court's judgment on Thomure's claims and affirm the summary judgment as to Williams. Because of the result we reach on Phillips's appeal, it is unnecessary for us to consider Thomure's arguments on cross-appeal or to consider Phillips's arguments other than the one challenging the submissibility of the case.

## I.

■ When reviewing a decision to deny judgment as a matter of law in the face of a jury verdict finding age discrimination, we must consider the evidence in the light most favorable to sustaining the verdict, resolving evidentiary conflicts in favor of the verdict. *See Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 450 (8th Cir.1993); *Glover v. McDonnell Douglas Corp.,* 981 F.2d 388, 391 (8th Cir.1992), *vacated and remanded for reconsideration of other issues,* —— U.S. ——, 114 S.Ct. 42, 126 L.Ed.2d 13 (1993). We recite the evidence here keeping that standard in mind.

## A.

In 1988, Thomure was fifty-eight years old and had worked for Phillips for more than thirty years as a furniture repairman. As a group, the furniture repairmen were the highest paid of the Phillips warehouse employees. At $15.75 per hour, Thomure was receiving the highest wage of any warehouse employee in 1988. He was considered a valuable employee.

In 1988, for various reasons, Phillips was experiencing serious financial difficulties. The company closed a store in St. Charles, Missouri, that had just opened—with a very successful start—in 1987. The store opened with the assistance of bank loans and a long-term, relatively expensive lease, obligations that had to be met or renegotiated despite the store's closing. Many of the St. Charles store employees lost their jobs, but Williams, then fifty-six years old, who was working at the store when it closed, was moved to another store.

During the summer of 1988, Phillips laid off three warehouse employees, none of whom were in the protected age group (over forty years old). In July 1988, wages of the warehouse employees were cut five percent across the board, except that the highest paid employees, who were among the most senior and the oldest, were cut more severely, and those employees earning less than $6.00 per hour were not cut at all. Phillips Sr., himself born in 1930, already had taken a pay cut of fifteen percent earlier in 1988.

Phillips Jr. and his three brothers who also worked for Phillips already had seen their salaries reduced by $250 per month. Thomure's wages were cut eleven percent, as were the salaries of Williams and Harry Thurmond, then fifty-seven years old. Alvah Montgomery, age sixty-two, had his wages cut thirteen percent. Dan O'Neill at age thirty-five was cut nine percent, and Bob Moore at age fifty-one was cut eight percent. Thomure and Williams started working for Phillips in 1955; Thomure had worked there ever since but Williams had a nineteen-month break in employment in the early 1960s. Thurmond, the warehouse manager, had been with the company for approximately nine years. Montgomery started with Phillips in 1953, and worked for the company continuously except for a four-year break in service.

In 1989 and 1990, the company continued to experience financial setbacks. In April 1989, on the day Montgomery retired, he overheard Phillips Jr. say, "Now if we could just get rid of Joe [Williams] and Jody [Thomure], everything would be alright." Trial Transcript Vol. I at 49. Later in 1989, only the wages of Thomure, Williams, and Thurmond (Montgomery had retired by then), plus the Phillipses, were cut again. Phillips originally intended to cut Thomure from an hourly wage of $14.00 to $11.00 per hour, in keeping with its revised wage range for his job classification, and Tom Phillips Sr. advised him of the cut. When Thomure protested the cut, Phillips Sr. suggested to Thomure that he might want to consider retiring. Thomure responded that he was not old enough to retire. After Phillips Sr. and Jr. discussed the cut and Thomure's reaction to it, they decided, and Phillips Jr. so advised Thomure, that the cut would be only to $12.00 per hour. Thomure also was permitted to return to working ten hours per day, four days per week, instead of five eight-hour days. Thomure preferred this schedule as it permitted him to have a full workday to care for his rental properties so he did not have to hire someone to do it for him. At some point, when Thomure asked Phillips Jr. if everyone in the warehouse was cut in 1989, Phillips Jr. responded no and told Thomure he could quit if he did not like it.

At the same time in 1989, the salary of an employee in the unprotected age group also was supposed to have been cut. As the result of a clerical error, however, that salary was not cut and another lower paid employee's salary actually was raised. One name was just below the other on the employee roster, and the bookkeeper evidently put down the wrong employee number when recording the salary change. The error was not discovered for some time, and the reason for it did not become apparent until some time after the discovery.

Phillips later tried to cut Thomure's hours from forty per week to thirty-two, but that plan was abandoned never having been implemented when it became apparent that there was sufficient work to keep Thomure busy for a forty-hour week.

In 1990, after Thomure filed his complaint with the EEOC, the company capped the annual paid vacation time to which employees were entitled at two weeks. This new policy affected only Thomure and Williams, as they had more than twenty-five years of service with Phillips and therefore had been receiving four weeks of vacation. Also after the charge was filed, Phillips Jr. asked Thomure what he hoped to gain by filing the charges, and Thomure responded that he wanted to recover the amount of lost wages above five percent. Phillips Jr. accused him of not caring about the company and told Thomure he would "be history" with Phillips. Trial Transcript Vol. II at 77.

Between 1987 and 1990, through Phillips's financial crisis, staffing in the warehouse was reduced from approximately eighty employees to approximately thirty. As of trial, Thomure was still a Phillips employee and was still the highest paid employee in the warehouse, having received salary increases in 1990 and in 1991.

B.

Because Thomure's age discrimination complaint concerns a reduction in wages made necessary by concerns for the financial health of the employer, we will review it as we would a reduction-in-force (RIF) case.

The RIF case is more analogous to the wage reduction situation than the more common termination, demotion, or failure to hire or promote age discrimination case. Thus the prima facie case that must be proved by the plaintiff to make a submissible case includes not only the employee's membership in the protected age group, his ability to meet job qualifications, and adverse employment action (in this case, a reduction in compensation) taken against him, but also requires a showing that age was a factor in the adverse employment action. *See Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir.1994). Because there is no direct evidence of age discrimination in this case, and because there is no evidence that wage cuts were not economically essential to the continued operation of the company, *see id.* at 824–25, we must determine, as a matter of law, whether there was sufficient evidence that age was a factor in Thomure's wage and vacation cuts to make a submissible case. We have reviewed the trial transcript furnished to us by the parties and have considered all the evidence of record. We conclude that Thomure did not make a submissible case of age discrimination.

Here the evidence was undisputed that Thomure was the highest paid Phillips employee in the warehouse, and that his salary was cut more than the salaries of others who were paid less, with the lowest paid employees not being cut at all. Thomure's high hourly wage was a function of his job, which required more skill than other warehouse positions, and of his long tenure at Phillips. He was not, as he claims, "a more expensive employee by reason of his age." Brief of Appellees/Cross–Appellants at 21. Phillips did not "rely on age as a proxy" for the high salaries it wished to reduce, but looked at the salaries themselves. *Hazen Paper Co. v. Biggins*, —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993).

Phillips made a personnel decision that likely was damaging to employee morale when it chose to cut wages at different rates based upon level of compensation, and Thomure and his cohorts may have perceived the cuts as unfair, but they were not the result of age discrimination. Phillips based its deci-sion not on age but on level of compensation. The warehouse employees with the highest salaries were, quite naturally, those with the most seniority. With service approaching thirty-five years, those employees were not only in the protected age group (older than forty) but were also among the oldest employees in the Phillips warehouse. As the Supreme Court observed: "On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service[,]" *id.* at ——, 113 S.Ct. at 1707, and by the same token also is distinct from his wage rate. Thus Phillips could "take account of one [salary] while ignoring the other [age]," *id.*, even though there happened to be a correlation between the two in several cases. This simply was not a case where the adverse employment action was the result of an age animus. Much younger employees lost their jobs altogether. Thomure received wage increases when the company's financial picture improved and remains the highest paid of the Phillips warehouse employees.

Apart from the actual reductions in salary and vacation time, actions that Phillips carried out on an age-neutral basis and for which it had a legitimate business justification, Thomure must rely on the comments of Phillips Sr. and Jr. to make a submissible case.

■ "Not all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision." *Radabaugh*, 997 F.2d at 449. The remarks that Thomure could quit if he did not like the cuts and that he might be fired for his disloyalty both were made in response to Thomure's reaction to the cuts. The comments were unrelated, however, to the decision to cut high wage earners more than lower paid employees were cut. *See id.* The statements at issue all were made after the cuts and were in response to Thomure's negative reaction. They may not have been particularly appropriate responses but they certainly were not made because of Thomure's age

nor were they indicative of an age animus on the part of his employer. Thomure was not fired and was not under pressure to quit. In fact, the record shows that Phillips made an effort to adjust his working conditions (apart from his wages) to suit him and his personal schedule.

■ Phillips Sr.'s suggestion that Thomure might want to consider retirement likewise is age-based only to the extent that one must be of a certain age to retire. Phillips Sr. said that he made the suggestion as a friend, and in fact Thomure testified that he considered that the two were friends and that they had a good relationship. Trial Transcript Vol. II at 93. Because Phillips did not put pressure on Thomure to retire and, in fact, according to the record, retirement was not suggested to him again, we cannot say that this remark reflects a "discriminatory animus in the decisional process." *Radabaugh*, 997 F.2d at 449 (quoted cases omitted). This is more along the lines of a non-discriminatory stray remark. *See id.*

■ A closer call is Phillips Jr.'s comment about "getting rid of" Williams and Thomure. In light of the evidence adduced concerning Phillips's financial condition, however, it is clear that Phillips Jr. at most was expressing his belief that the company would be "alright" if those two employees left, not because they were older, but because they were the highest paid warehouse employees, the company was in financial distress, and their departure would save the company a great deal of money. Although the remark was ill-advised and badly timed (having been made on the occasion of Montgomery's retirement), it is not evidence that age was a factor in Thomure's wage and vacation reductions.

These comments, even considered together, do not support an inference that age was a motivating factor in Phillips's compensation decisions.

It would be an injustice and an unwarranted interference with business judgment for us to affirm the judgment in this case. We would be telling employers experiencing financial hardship that they run the risk of an age discrimination lawsuit if, by cutting the wages of their highest paid employees to a greater degree than those of lower paid employees, they also happen to be cutting more dramatically the wages of a disproportionate number of workers in the ADEA-protected age group. We will not substitute our judgment for the business judgment of the company and declare that Phillips should have managed its financial crisis differently. *See Rademaker v. State of Neb.*, 906 F.2d 1309, 1312–13 (8th Cir.1990).

We hold that the evidence was not sufficient for a jury reasonably to find that age was a factor in Phillips's decision to cut Thomure's wages and paid vacation. Because Thomure failed to make a submissible case of age discrimination, Phillips is entitled to judgment as a matter of law.

## II.

■ As a result of our holding in Part I, there remains only one issue from the appeal or cross-appeal for us to address: Williams's argument that summary judgment on his claims was improperly granted.

Summary judgment was granted to Phillips on Williams's claims because the court found it had no jurisdiction, concluding that Williams never filed an administrative charge with the appropriate agency and was not entitled to equitable relief from the requirement, that is, he could not "piggyback" on Thomure's charge.[1] Williams claims that a letter he signed in March 1990 that Thomure delivered to the EEOC (along with other letters) in support of Thomure's age discrimination charge qualifies as a filed charge, or, in the alternative, that he should be allowed to piggyback on Thomure's October 1989

---

1. "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). We conclude that the court's decision to grant summary judgment was proper on the ground of Williams's failure to file a timely charge, rather than on the ground of a lack of federal jurisdiction.

charge under the so-called single filing rule. We reject both of these arguments.

We review the decision to grant summary judgment de novo, and we will affirm if we conclude there are no genuine issues of material fact and Phillips is entitled to judgment as a matter of law on Williams's claims. *See* Fed.R.Civ.P. 56(c).

Thomure testified in his deposition that he solicited Williams to join his charge when he first filed with the EEOC, and that Williams (along with Harry Thurmond) decided not to join Thomure's charge. Williams's deposition testimony was along the same lines. Both then testified later at the hearing on the motion for summary judgment that they intended the letter in question to have "associated" Williams with Thomure's charge.

Williams's letter was one of three Thomure solicited from his fellow workers in support of his claim. The letters were neither notarized nor supported by affidavits. Thomure delivered them to Mrs. Simmons, the EEOC employee who had taken his original charge. The three letters laid out certain factual information relating to the age of the writer and to the wage cuts he had taken (as well as the writer's understanding of the amount that other Phillips employees' wages had been cut), but none mentioned age discrimination.

Williams dictated his letter to Thomure at Thomure's instigation. Thomure wrote, typed, and read back the letter to Williams, who then signed it. The letter, dated March 5, 1990, was addressed to the EEOC but did not contain Williams's return address. The letter read as follows:

Dear Mrs. Simmons:

I have been employed at Philip's [sic] furniture since April 8, 1955 except for a period of nineteen months in 1962–63. I have worked as a warehouseman and driver as needed.

In July of 1988 the company called a meeting and announced that every one in the warehouse and on the trucks would recieve [sic] a pay cut of five percent. I recieved [sic] a pay cut of thirteen percent from $11.50 per hour to $10.00 per hour, a $60.00 per week cut. ($3,120.00 Per year)

Some of the others recieved [sic] eleven and a half percent cuts, but most recieved [sic] a five percent cut.

Then on June 1, 1989 I recieved [sic] another ten percent pay cut from $10.00 to $9.00 per hour, $2,080.00 per year. This made a total of $5,200.00 per year.

This last cut was only given to the three oldest employees in the warehouse. I am fifty seven years old, born September 10, 1932.

The letter is signed "Joe Williams," followed by a hand-written phone number.

The Thurmond letter, also dated March 5, 1990, contained substantially the same information concerning Thurmond and his wage cuts. Thurmond testified that he specifically told Thomure that he did not wish to be included in Thomure's charge, either when the charge was filed in October 1989 or when he wrote the March 5, 1990, letter in support of Thomure's charge. The third letter, dated March 8, 1990, also to Mrs. Simmons, was from a twenty-nine-year-old Phillips employee whose salary was cut only five percent— clearly that employee had no intention of "associating" himself with Thomure's charge.

We do not think Williams's letter was a charge of age discrimination properly filed with the EEOC within the meaning of the ADEA, presented to the EEOC as it was in support of Thomure's claim and along with two similar letters from employees who either had no intention of filing a charge of age discrimination, or had no legal basis to do so. Williams's and Thomure's subjective intent to the contrary is not persuasive on this question of law.

Williams argues that whether or not his letter was a properly and independently filed charge, Phillips had notice that he was pursuing an age discrimination claim against the company, had an opportunity to conciliate the claim, and therefore was not prejudiced by Williams's failure to file a formal charge. We disagree. Regardless of when and how Phillips found out that Williams, too, was charging the company with age discrimination, the company did not receive the formal notice that Congress intended the administrative charge process to provide an employ-

er. *See Ulvin v. Northwestern Nat'l Life Ins. Co.,* 943 F.2d 862, 865 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992). Having received notice of Thomure's charge and no other, Phillips was entitled to assume that its other employees in the protected age group were not challenging the company's compensation decisions as age-based.

In support of his argument that he should be permitted to piggyback on Thomure's charge, Williams cites *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). In *Allen,* this Court allowed piggybacking on a race discrimination suit in federal court even though thirteen of the fifteen plaintiffs had failed to exhaust administrative remedies. The Court said that, where the nonfiling plaintiffs "were similarly situated and had received the same discriminatory treatment" as the plaintiffs who properly filed charges, "particularly where the discrimination [failure to grant seniority] is continuing[,] it would be nonsensical to require each of the plaintiffs to individually file administrative charges with the EEOC." *Id.* at 882–83. We do not think that requiring Williams to have filed administrative charges within the limitations period and before suit was filed is "nonsensical." This case is distinguishable from *Allen* in several respects.

The *Allen* court analogized the situation it faced to a case where this Court permitted a union to file charges on behalf of the employees. The Court found "applicable" the reasoning that "there had been no attempt to bypass the EEOC." *Id.* at 883. Here, however, Thomure told Williams where and how to file a charge, and that he needed to go to the EEOC to do so. Williams said at the time that he was not interested, but that does not negate the fact that he knew what he was required to do when he later decided that he had been discriminated against after all. Moreover, this is not the sort of "continuing" violation found in *Allen,* for which one presumably could always file a charge as long as the violation continued. The pay cuts Phillips effectuated were the result of an affirmative act (as compared with **not** granting seniority in *Allen* ), and they took effect at a time certain.

Finally, in his argument Williams claims he received discriminatory treatment similar to Thomure's in the same time frame Thomure received it and for that reason alone he should be permitted to invoke the single filing rule. In this case, however, we have concluded as a matter of law that Thomure was not the victim of age discrimination at the hands of Phillips, so the original EEOC charge upon which Williams wished to piggyback is equally without merit. We realize we cannot pass on the merits of Williams's claims as we have Thomure's, since only Thomure's case went to trial and Williams did not have the opportunity to present his evidence. Nevertheless we can say that, in the absence of a properly filed discrimination charge, a party cannot be permitted to proceed with his discrimination lawsuit if he is attempting to piggyback on another's meritless charge (a charge Williams claims has essentially the same factual basis as his own) in order to exhaust his administrative remedies and satisfy the statutory prerequisite.

III.

We reverse the judgment in favor of Thomure and remand to the magistrate judge with instructions to enter judgment for Phillips and to vacate the award of attorney fees. We affirm the summary judgment in favor of Phillips on Williams's claim.