# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1686

_____

| | | |
|---|---|---|
| Robin L. Tuttle, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Missouri Department of Agriculture; | * | District of Missouri. |
| John L. Saunders, Director, Missouri | * | |
| Department of Agriculture; Charles | * | |
| Ausfhal, Director of Grain Inspector | * | |
| of Division of Missouri Department | * | |
| of Agriculture, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 16, 1998

Filed: March 26, 1999

_____

Before MCMILLIAN, FLOYD R. GIBSON and HANSEN, Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

This case concerns Robin Tuttle's claim that his former employer, the Missouri Department of Agriculture (Department), discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (1994), and Tuttle's claim that two of his former supervisors, Charles

Ausfhal and John Saunders, violated his right to free speech by terminating him for speaking out on matters of public concern, in violation of 42 U.S.C. § 1983 (1994). Following a jury verdict in Tuttle's favor on both claims,[1] the district court[2] granted the Department's and Ausfhal's (collectively "the defendants") motion for judgment as a matter of law (JAML). Tuttle appeals the district court's order. For the reasons set forth below, we affirm the district court.

## I. BACKGROUND

Robin Tuttle had been employed as a Grain Inspector, Class I, with the Department's North Kansas City branch of the Grain Inspection Program for twenty-three years at the time of his termination in December of 1995. Tuttle was terminated as part of a reduction-in-force (RIF). Tuttle was fifty-one years of age at the time of his termination.

The Grain Inspection Program (Program) is the official designee of the United States Department of Agriculture's Federal Grain Inspection Service. As such, the Program is authorized to perform official federal grain weighing and grading. To qualify as an official grain grading agency, the Program must be operated on a fee-funded basis[3] and must utilize a merit, rather than patronage, system.

The Program utilizes six employee classifications: Grain Sampler, Grain Inspector I, Grain Inspector II, Grain Inspector III, Grain Inspector IV, and Grain

---

[1]The jury found in favor of John Saunders on the §1983 claim. The jury's disposition of that claim is not at issue on appeal.

[2]The HONORABLE JOSEPH E. STEVENS, late a United States District Judge for the Western District of Missouri.

[3]A fee-funded agency is one which generates its income based upon fees paid for its services, rather than receiving general appropriations from the state.

Inspector V.[4]  Grain Samplers are part-time employees whose main duties are sampling grain and transporting grain to a licensed grain grader.  Grain Inspector Is are full-time regular employees who perform essentially the same function as Grain Samplers.  Grain Inspector IIs are also full-time regular employees whose main duties are sampling and grading grain.  Grain Inspector IIs must have a grain grading license to qualify for this position.  At some point after Tuttle was hired, the Program stopped hiring Grain Inspector Is.[5]

Between March of 1993 and June of 1996, the Program sustained losses of $1,200,000.  In an effort to cut costs, the defendants eliminated the entire class of Grain Inspector Is at the North Kansas City branch in December, 1995.  Five Grain Inspector Is were terminated as part of the RIF.  Tuttle and the other Grain Inspector Is were invited to stay on with the Department as part-time Grain Samplers with decreased hours, pay and benefits.  Tuttle rejected the Department's offer.  All of the Grain Inspectors Is terminated in the RIF were over the age of forty and had been with the Department for a number of years.

On August 12, 1996, Tuttle commenced this action against the Department, alleging that his termination violated the ADEA.[6]  Several months later, Tuttle amended his complaint to include Ausfhal and Saunders as defendants.  In his amended complaint, Tuttle alleged  that Ausfhal and Saunders had terminated him because, in the summer of 1995, he had spoken out on matters of public concern.

---

[4]Only the responsibilities of Grain Samplers, Grain Inspector Is, and Grain Inspector IIs are pertinent to this case.

[5]The Program stopped hiring Grain Inspector Is because they were the least flexible of the employment classifications.  See Tr. at 80.

[6]Tuttle's First and Second Amended Complaint included an ERISA claim and a Missouri Human Rights Act claim.  The district court dismissed these claims in its order of August 25, 1997.  See Appellee's Supplemental App. at 44-50.

Thus, Tuttle charged the defendants with violating his First Amendment right to free speech.[7]

On August 13, 1997, the defendants filed a motion for summary judgment with the district court. Tuttle responded to the motion on September 11, 1997. The district court did not rule on the motion prior to trial but took the motion under advisement. See Tr. at 91, 369-70. On October 20, 1997, the case proceeded to trial. Following the presentation of Tuttle's evidence, and again at the close of all the evidence, the defendants moved for JAML. See id. at 369; App. at 22-24. The district court overruled the motion and allowed the case to go to the jury.

On October 23, 1997, the jury returned a verdict for Tuttle on his ADEA claim, finding that the Department had acted willfully in terminating him. On the §1983 claim, the jury found for Tuttle and against Ausfhal. On October 30, 1997, the defendants filed a renewed motion for JAML, or in the alternative, a request for a new trial. On January 29, 1998, the district court granted both of the defendants' motions. The district court held that "no reasonable jury could have returned verdicts in favor of Tuttle." App. at 22-24. This appeal ensued.

## II.    DISCUSSION

Tuttle argues that the district court erred by concluding that the evidence at trial was legally insufficient to support the jury's verdict. We review a grant of JAML de novo, applying the same standard as the district court. See Sims v. Sauer-Sundstrand Co., 130 F.3d 341, 343 (8th Cir. 1997); Krumwiede v. Mercer County Ambulance

---

[7]Tuttle further alleged that his association with his step-daughter, whom defendants believed held stock in a company which competed with the Department, also played a role in his termination. As Tuttle appears to have abandoned his claim that the Department violated his right to freedom of association on appeal, this claim merits no discussion.

Serv. Inc., 116 F.3d 361, 363 (8th Cir. 1997). Accordingly, in our review we must consider the evidence in the light most favorable to Tuttle, assume that all evidentiary conflicts were resolved in favor of Tuttle and that Tuttle's evidence is true, and give Tuttle the benefit of all favorable inferences which may reasonably be drawn from the facts. See Clements v. Gen. Accident Ins. Co. of America, 821 F.2d 489, 491 (8th Cir. 1987). We will uphold the district court's grant of JAML only if reasonable minds could not differ from the evidence. See id. Furthermore, "all the evidence must point one way and be susceptible of no reasonable inference sustaining the position of [Tuttle]." Jarvis v. Sauer Sundstrand Co., 116 F.3d 321, 324 (8th Cir. 1997) (internal quotation omitted). Although Tuttle is entitled to the benefit of all reasonable inferences, "we may not accord him the benefit of unreasonable inferences." Hopper v. Hallmark Cards, Inc., 87 F.3d 983, 988 (8th Cir. 1996) (internal quotation omitted).

## A. ADEA CLAIM

As Tuttle's claims are based largely on circumstantial evidence, the familiar burden-shifting scheme developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973), applies to this case. This three-step analysis first requires that Tuttle present a prima facie case of discrimination. Once Tuttle puts forth evidence sufficient to satisfy his prima facie case, a legal presumption of unlawful discrimination is created. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). The burden of production then shifts to the Department to articulate a legitimate non-discriminatory reason for the adverse employment action. If the Department identifies a legitimate non-discriminatory reason for its action, the burden of production then rests with Tuttle. At that point, Tuttle must show that the employer's proffered reason is pretextual and that "he has been the victim of intentional discrimination." Id. at 508 (internal quotation omitted). The burden of proof at all times remains with Tuttle. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).

To establish a prima facie case of age discrimination in a RIF context, Tuttle must show that he was in the protected age group,[8] that he satisfied the applicable job qualifications, that he was discharged, and produce some additional showing that age was a factor in his termination. See Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 483-84 (8th Cir. 1997). While it is clear that Tuttle has met the first three elements, we are doubtful that the "additional showing" element has been satisfied. Nonetheless, for the purposes of this appeal, we will assume that Tuttle sufficiently established each element of his prima facie case. See Lewis v. Aerospace Community Credit Union, 114 F.3d 745, 749-50 (8th Cir. 1997), cert. denied, 118 S.Ct. 1392 (1998) (comparing lesser evidentiary standard necessary to establish prima facie case with that necessary to rebut nondiscriminatory explanations); Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1165-68 (8th Cir. 1985) ("we [should] not be overly rigid in our consideration of the evidence of discrimination a plaintiff may offer" to establish the "additional showing.").

As we have assumed that Tuttle established his prima facie case, we turn now to the Department's proffered explanation for Tuttle's termination. The Department contends that its termination of Tuttle was part of a cost-reducing RIF necessary for the Program's continued economic viability. The non-discriminatory reason advanced by the Department effectively rebuts the presumption of discrimination created by Tuttle's prima facie case. At this point, we focus our review on the ultimate factual issue: whether the Department intentionally discriminated against Tuttle based upon his age. See Feltmann v. Sieben, 108 F.3d 970, 975 (8th Cir. 1997), cert. denied, 118 S. Ct. 851 (1998); Serben v. Inter-City Mfg. Co., Inc., 36 F.3d 765, 766 (8th Cir. 1994) (per curiam).

---

[8]The ADEA protects individuals who are at least forty years of age. See 29 U.S.C. § 631 (1994).

Tuttle contends that he presented sufficient evidence from which a jury could reasonably infer that his termination was the product of age discrimination. Tuttle points to several pieces of evidence which allegedly belie the Department's proffered rationale for his termination.

Tuttle first claims that the defendants had a pattern of forced early retirement. Tuttle presented evidence at trial that Ausfhal, in a May 30, 1995 meeting, stated that the Department needed to find a way for more personnel to "retire" because of the Department's financial situation. See Notes of SPM's Meeting (May 30, 1995), App. at 61; Trial Ex. 18. Tuttle argues that, because the Department had no voluntary early retirement program available to employees at the time that Ausfhal made the statement, the jury could reasonably have inferred that the RIF was a ploy by the defendants to enforce an involuntary early retirement program. We disagree.

As we have previously noted, "an employer's offer of voluntary 'early retirement to other protected employees does not violate the ADEA and does not support an inference of age discrimination.'" Reynolds v. Land O'Lakes, Inc., 112 F.3d 358, 363 (8th Cir. 1997) (quoting Serben, 36 F.3d at 766); see also Thomure v. Phillips Furniture Co., 30 F.3d 1020, 1024-25 (1994) (employer's statement to plaintiff that he could quit if he did not like the salary cuts implemented during an economic downturn insufficient evidence of age animus to sustain jury verdict). The evidence presented by Tuttle is even less probative of age animus. We cannot say that the mere fact that at a management meeting, in which the financial situation of the Department was discussed, a supervisor's statement that the retirement of personnel would be beneficial to the Department's finances indicates a discriminatory animus.

Tuttle next alleges that the defendants preferred younger employees.  As evidence of this preference, Tuttle relies largely on his own observations.[9]  However, Tuttle's speculation regarding the reasons for his termination, without more, will not suffice to support a reasonable inference of age discrimination.[10]

---

[9]Tuttle's testimony on this topic consists of the following:

> Q.    In the recent years before you were laid off in December 1995, did you see a trend in the division toward younger workers?
>
> A.    Yes.
>
> Q.    Did you see any favortism [sic] toward those younger workers as far as promotions and advancements?
>
> A.    Seems like they advanced quicker.
>
>                *    *    *
>
> Q.    Do you believe that your age was a factor in being laid off?
>
> A.    Yes, I do.

Tr. at 303-04.

[10]This Court has noted that circumstantial evidence "such as a <u>demonstration</u> of a preference for younger employees" could provide the "additional showing" necessary to establish a <u>prima facie case</u> in the ADEA - RIF context.  <u>Holley</u>, 771 F.2d at 1166 (emphasis added).  However, we do not construe our holding in <u>Holley</u> to mean that any protected employee who is terminated in a RIF need only allege that a preference for younger employees exists in order to establish the reasonable inference of discriminatory animus necessary to survive a summary judgment motion or sustain a jury verdict.

-8-

Tuttle also relies on the testimony of Steve Bell, the Program's former state-wide Program Administrator. Bell testified that: 1) most of the Grain Inspector IIs are newer employees with less experience than Tuttle; 2) if Tuttle were grouped with the Inspector IIs, he would have more seniority than most of the Inspector IIs; 3) a significant number of Inspector IIs are not younger than Tuttle; 4) that some Inspector IIs have done less grain grading and have less seniority than Tuttle. See Tr. at 61, 63, 64, 69. The fact that many Grain Inspectors IIs had less experience and seniority than Tuttle does not reasonably create an inference that the Department's decision to eliminate the entire class of Grain Inspector Is was motivated by any discriminatory purpose. We cannot say that an employer's decision to reduce its payroll costs by eliminating the least versatile class of employees, whose work could be distributed to lower-paid part-time employees, is sufficient evidence to support a finding of age discrimination. See Thomure, 30 F.3d at 1025 ("We will not substitute our judgment for the business judgment of the [employer] and declare that [the employer] should have managed its financial crisis differently").

Tuttle next alleges that he presented evidence of the Department's refusal to promote older employees. Tuttle argues that the fact that he was qualified for the position of Grain Inspector II and was not promoted to that position creates an inference of age discrimination. We must again disagree. According to testimony at trial, the Program was not filling any vacant Inspector II positions due to its poor financial condition. See Tr. at 203; App. at 81. The Department's decision to eliminate one class of employees as a cost-saving measure and not to promote one of the affected employees to another full-time position does not create a reasonable inference of age discrimination.

Tuttle also relies on statistical evidence to support his claim of age discrimination. Tuttle alleges that, as each member of the class of Grain Inspector Is affected by the RIF were over the age of forty, a jury could reasonably have inferred that age animus motivated the Department's structuring of the RIF. While we note

that in some instances statistical evidence comparing the age of those employees terminated in a RIF with the age of those employees retained may be enough to "cause a reasonable trier of fact to raise an eyebrow," we do not believe such an inference is reasonably created in this case. MacDissi v. Valmont Indus. Inc., 856 F.2d 1054, 1058 (8th Cir. 1988) (trier of fact could reasonably infer that age animus played a role when two oldest employees in a department of nine were terminated in RIF, leaving only one employee over thirty-three years of age). Tuttle's evidence is analogous to that presented by the plaintiffs in Lewis, 114 F.3d 745. In Lewis, we held that, although evidence that Aerospace terminated three management employees, all over the age of fifty, was sufficient "additional evidence" to establish the plaintiff's prima facie case, it was insufficient as a matter of law to rebut Aerospace's nondiscriminatory explanations. Id. at 748-50. We find Lewis to be especially applicable to this case. The Department's nondiscriminatory explanation, that it decided to eliminate the entire class of employees who were considered the least flexible and whose work could be completed by cheaper, part-time employees, has not been rebutted by Tuttle's evidence that each member of the class was over the age of forty and treated in the exact same manner. Furthermore, Tuttle offers no other statistical evidence that the overall age of the Program's employees declined other than his own statement. See Tr. at 303. We find this insufficient as a matter of law to sustain the jury's verdict in this case.

Tuttle presented evidence at trial, in the form of several internal memoranda, that the Department's management was concerned that the RIF plan might result in age discrimination lawsuits. See App. at 29, 37, 39-40, 44-45, 53, 54. That an employer involved in a RIF which affected only protected employees would voice some concern over the possibility of litigation does not strike us as probative of whether the employer was motivated by age animus. In today's litigious society, "[i]t would be a foolhardy supervisor indeed who, however well-documented and irrefutably established a termination decision might be, would not have some concern

over possible litigation." Bashara v. Black Hills Corp., 26 F.3d 820, 824 (8th Cir. 1994).

Tuttle also points to a comment made by Ausfhal to Jeff Richter, a Grain Inspector II, regarding one of the terminated Grain Inspector Is, as evidence capable of raising a reasonable inference of age discrimination. According to Richter's deposition testimony, several months after the RIF occurred, Ausfhal stated that one of the terminated Grain Inspector Is "wasn't capable of carrying the workload . . . [and] that we needed people that can handle the job." Appellant's Brief at 26-27. The jury did not hear this comment because the district court sustained the defendants' objection to the evidence as having no relevance to age. We similarly believe that the comment is not probative of age animus and does not support a reasonable inference of age discrimination.

Tuttle further alleges that the Department's failure to follow its own lay-off procedures gives rise to a reasonable inference of age discrimination. Tuttle, however presented no evidence that the Department actually failed to follow its own lay-off procedures. Tuttle contends that the part-time Grain Samplers and the full-time Grain Inspector Is should have been considered as one class of employees. Thus, Tuttle's argument goes, had the Department considered the two groups of employees as one class, the proper lay-off procedure would have been to terminate the part-time employees first. Tuttle presented no evidence, however, that the two groups actually were one class nor that the Department ever considered the two groups as one class. While evidence was presented that the Grain Samplers and the Grain Inspectors Is performed similar duties, no evidence exists to support Tuttle's assertions that the Grain Samplers and Grain Inspectors were a single class of employees. Tuttle's belief that the two groups should have been classified together for lay-off purposes simply does make it reasonable to infer that the Department's consideration of the Grain Samplers and Grain Inspectors Is as two distinct classes for the purposes of the RIF was a pretext for age discrimination.

-11-

Tuttle contends that he presented sufficient evidence to demonstrate that the Department's proffered reason for the RIF, the poor financial condition of the Grain Inspection Program, was actually a pretext for age discrimination. Tuttle points to the fact that he was qualified for the position of Grain Inspector II and had more seniority and experience than some of the Grain Inspector IIs retained by the Department. As we have previously noted, we "may not second-guess an employer's personnel decisions, and we emphasize that employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully." Hanebrink v. Brown Shoe Co., 110 F.3d 644, 646 (8th Cir. 1997); see also Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 763 (8th Cir. 1995) (in RIF context, assumption of plaintiff's duties by younger person insufficient to establish prima facie case).

Tuttle's contention that the Department's poor financial condition was a pretext for unlawful age discrimination need not detain us long. Considerable evidence and numerous witnesses substantiated the Department's claim of financial problems within the Program. Indeed, Tuttle testified that he agreed with the statement that "there were financial problems in the Grain Inspection Program in 1995." Tr. at 297. Tuttle's allegation that the Program's financial woes were pretextual is, without more, insufficient to create a reasonable inference that age was a motivating factor in the RIF. See Krumweide, 116 F.3d at 364 (plaintiff's contention that employer did not suffer alleged financial woes is "unconvincing" given plaintiff's admission that there was need to minimize costs); Herrero, 109 F.3d at 485 (plaintiff's economic analysis that employer could have saved money by terminating higher paid employees rather than her does not constitute cognizable evidence of discrimination).

After a careful review of the record, we agree with the district court that the evidence presented by Tuttle was insufficient as a matter of law to support the jury's

verdict.[11]  Although viewed in the light most favorable to the jury's verdict, we cannot say that Tuttle presented evidence sufficient to create a reasonable inference that the defendants' nondiscriminatory explanation for the RIF was actually a pretext for age discrimination.  Accordingly, we affirm the district court's grant of JAML on Tuttle's ADEA claim.

## B.    SECTION 1983 CLAIM

On appeal, Tuttle also argues that the district court erred in granting JAML to the defendants on his §1983[12] claim.  Tuttle alleges that the Department terminated him after he spoke out on matters of public concern, thus violating his First Amendment rights.  Tuttle contends that, as he presented sufficient evidence to establish the elements of a prima facie §1983 case, the district court's order was erroneous and should be reversed.  We disagree.

In reviewing challenges to discharges based on alleged violations of an employee's freedom of speech rights, courts engage in a two-step analysis.  See Tyler v. City of Mountain Home, Arkansas, 72 F.3d 568, 569-70 (8th Cir. 1995).  We must first determine whether the plaintiff established that he engaged in a protected activity.  See Hamer v. Brown, 831 F.2d 1398, 1401 (8th Cir. 1987) (citing Pickering

---

[11]Although Tuttle also points to other evidence (such as defendants' false promises to consider Tuttle for a promotion, defendants' cancellation of Tuttle's grain license test, and defendants' false promises to meet with the affected employees to discuss the RIF) which he alleges could create a reasonable inference of age discrimination, we find these contentions are without merit and warrant no further discussion.

[12]42 U.S.C. § 1983 provides that any person who, acting under the color of law, "subjects, or causes to be subjected, any citizen . . .  to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. §1983 (1994).

v. Bd. of Educ., 391 U.S. 563, 569-72 (1968)).  Speech which is constitutionally protected is that which can be "fairly characterized as constituting speech on a matter of public concern."  Connick v. Myers, 461 U.S. 138, 146 (1983).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  Id. at 147-48 (footnote omitted).  If an employee's speech is found to involve a matter of public concern, courts must then balance the interest of the employee, as a citizen, with the interest of the state, as an employer.  See Hamer, 831 F.2d at 1402;  Tyler, 72 F.3d at 570.  Both of these inquiries involve matters of law for the court to decide.  See Dunn v. Carroll, 40 F.3d 287, 291 (8th Cir. 1994).  Because we find that Tuttle has failed to establish that his speech constituted a protected activity, we need not engage in the second step of the analysis.

Tuttle's testimony regarding the matters upon which he spoke out to Ausfhal and Saunders may best be described as sparse.  On direct examination, Tuttle stated that he had spoken to Ausfhal about:

> The possibility of cutting back, how that was going to affect us.  Why was it just us and not other parts at that time.  And other matters about another employee who was wanting to take the grain test but he was color blind and to see if I heard if the defendant could give waivers on such cases if they could see and prove his color-blindness did not affect his ability to grade grain, that he could still see enough patterns to determine the, it wouldn't affect to grade the grain. [sic]

Tr.  at 291.  Upon cross-examination, Tuttle testified that his conversation with Ausfhal included topics such as: increases in salaries, promotions, safety issues.[13]  See Tr. at  326-28.

---

[13]Tuttle never filed a grievance regarding any of the safety issues discussed with Ausfhal.  See Tr. at 328.

-14-

While we cannot say, as a matter of law, that Tuttle's testimony is so lacking in specifics as to render us unable to determine whether his speech constituted protected activity, this is a close case. See Lesher v. Reed, 12 F.3d 148, 151 (8th Cir. 1994). We do hold, however, that Tuttle's speech does not constitute a protected activity. Tuttle was speaking out as an employee, not as a concerned citizen. See Connick, 461 U.S. at 147 ("when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision"). Although Tuttle argues that his mention of another worker illustrates that he was not concerned only with himself, we recently noted that "an employee speaking about internal practices relevant only to fellow employees" has not engaged in protected speech. Calvit v. Minneapolis Public Schools, 122 F.3d 1112, 1117 (8th Cir. 1997). As Tuttle failed to establish that he engaged in protected activity, we affirm the district court's grant of JAML on the §1983 claim.[14]

## III.    CONCLUSION

For the reasons set forth in this opinion, we affirm the judgment of the district court granting the defendants' motion for JAML on Tuttle's ADEA and §1983 claims.

Affirmed.

---

[14]Our affirmance of the district court's order renders Tuttle's other claims of error  on appeal moot.

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.