**Jackie L. STOCKHAM, Appellant,**

v.

**MISSOURI DEPARTMENT OF AGRICULTURE, Division of Grain Inspection and Warehousing, Charles Ausfahl, and John L. Saunders, Respondents.**

No. WD 60058.

Missouri Court of Appeals,
Western District.

July 30, 2002.

As Modified Oct. 1, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2002.

Application for Transfer Denied Nov. 26, 2002.

Patrick J. Doran, Kansas City, for appellant.

Sara L. Trower, Jefferson City, for respondents.

Before ULRICH, P.J.,
BRECKENRIDGE and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

Jackie L. Stockham sued the Missouri Department of Agriculture, Division of Grain Inspection and Warehousing (Grain Inspection Division); Charles Ausfahl, who is the Director of the Grain Inspection Division; and John L. Saunders, who is the Director of the Missouri Department of Agriculture (the Department); after he was laid off from his job with the Grain Inspection Division. The basis for Mr. Stockham's claims was his assertion that

he was laid off in violation of the Department's policy that temporary workers in a class must be laid off prior to the layoff of any full-time workers in the same class. The court entered summary judgment in favor of the defendants. On appeal, Mr. Stockham contends that summary judgment was improper because genuine issues of material fact remain which preclude summary judgment. Because this court finds that Grain Inspectors I and Grain Samplers were, by law, in separate classes, there is no genuine issue of material fact and the defendants were entitled to judgment as a matter of law. The summary judgment of the trial court is affirmed.

## Factual and Procedural Background

On appeal from a summary judgment, this court reviews the facts, and any reasonable inferences therefrom, in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). Thus, this court will review the facts in the light most favorable to Mr. Stockham. Since the 1970s, the Department has had a contract with the Federal Grain Inspection Service (FGIS) of the United States Department of Agriculture (USDA) to perform official grain inspections for the FGIS in Missouri. The contract with the FGIS required that Missouri's Grain Inspection Program adopt a merit system, subject to the FGIS's approval, to handle hiring, firing, promoting, demoting, and laying off employees. The Grain Inspection Program adopted such a system. Regarding layoffs, the Grain Inspection Program's merit plan provided that "[n]o regular employee shall be laid off while a person is employed on a prov-

sional [sic], temporary or probationary basis in the same class in that program."

The entire Department subsequently adopted a merit plan that contained a similar layoff policy. The Department's merit plan, which was approved in 1983, provided that "[t]emporary and hourly employees in an affected class must be laid off first." The evidence in the record on appeal does not indicate whether the Department's merit plan superseded the Grain Inspection Program's merit plan. The resolution of this issue is not necessary, however, because under both plans, temporary[1] workers in a class were to be laid off before full-time employees in the same class. This court will refer to the similar layoff polices as simply as "the Department's layoff policy."

In 1990, the legislature enacted the Uniform Classification and Pay System (UCP). Under the UCP, the state's Office of Administration (OA) reviewed positions throughout state government and classified those positions. The OA assigned each job class within the Department its own four-digit number. None of the job classes within the Department that were designated by the OA included both part-time or temporary employees and full-time employees.

Two of the positions within the Grain Inspection Program that were designated as different classes under the UCP were Grain Inspector I and Ag Sampling Technician (Grain Sampler). The primary job of both the Grain Inspectors I and the Grain Samplers was to sample grain. Grain Inspectors I were full-time employees, while Grain Samplers were part-time, hourly employees. Prior to the adoption of the UCP, Grain Inspectors I and Grain Samplers had the same job title. When

---

**1.** This court will assume, without deciding, that the Grain Inspection Program's merit plan's reference to "provisional, temporary or probationary" employees includes the part-time, hourly Grain Samplers, because it does not affect the resolution of the appeal.

the UCP was in the process of being implemented, the Director of the Grain Inspection Division and the Program Administrator for the Grain Inspection Division specifically requested that the part-time, hourly Grain Samplers "be set apart by some method" from the full-time Grain Inspectors I because they "realized the problem that would ensue with a lay-off."

In the mid–1990s, the Kansas City office of the Grain Inspection Division performed more grain inspections than any of the five other state grain inspection offices. Overall, however, the Grain Inspection Program was losing revenue. Mr. Ausfahl, the Director of the Grain Inspection Division, and his executive staff discussed how to decrease expenditures and increase revenue. A planner with the Department recommended to Mr. Ausfahl that the Grain Inspection Division layoff all Grain Inspectors I and replace them with Grain Samplers.

In response to this recommendation, Steve Bell, the Program Administrator for the Grain Inspection Division, told Mr. Ausfahl in November 1994 that he did not believe the Grain Inspectors I could be laid off before the Grain Samplers. Since Grain Inspectors I "were primarily grain samplers," and at one time Grain Inspectors I and Grain Samplers were "one classification," Mr. Bell questioned whether the two positions "still would have to be treated as one classification for purposes of lay-off." Mr. Bell reiterated his beliefs in a memo he wrote to Mr. Ausfahl on February 15, 1995, concerning employee layoffs by class. In the memo, Mr. Bell told Mr. Ausfahl that Grain Inspectors I and Grain Samplers have "almost identical" job duties and requirements and "may have to be considered a single class for purposes of lay-off determinations." Mr. Ausfahl agreed that basically there was no difference between the kind of work the

Grain Inspectors I and Grain Samplers were doing. At a management meeting the next day, Mr. Bell again stated that he believed Grain Inspectors I and Grain Samplers were in the same "multiple title class."

In December 1995, with the knowledge and approval of the Director of the Department, Mr. Ausfahl notified all Grain Inspectors I in the Kansas City office that they would be laid off at the end of that year. Mr. Stockham was one of the Grain Inspectors I who received this notice. No Grain Samplers were laid off and, in fact, the Kansas City office hired more Grain Samplers in 1996.

In December 1998, Mr. Stockham filed a petition for declaratory and injunctive relief and damages against the Department of Agriculture, Division of Grain Inspection; Mr. Saunders, who was the Director of the Department; and Mr. Ausfahl. Mr. Stockham raised several claims, all premised on his assertion that the part-time, hourly Grain Samplers were in the same class as the full-time Grain Inspectors I because they performed the same job function. Because no part-time, hourly Grain Samplers were laid off before the Grain Inspectors I were laid off, he contended the layoff was contrary to the Department's layoff policy.

After the defendants moved to dismiss Mr. Stockham's petition, the court dismissed several of his claims. Mr. Stockham's remaining claims were (1) Mr. Saunders and Mr. Ausfahl violated his substantive and procedural due process rights by laying him off; (2) the Department of Agriculture, Division of Grain Inspection; Mr. Saunders; and Mr. Ausfahl breached their contractual duties to Mr. Stockham by laying him off; and (3) Mr. Saunders and Mr. Ausfahl tortiously interfered with his contractual relationship, his

employment, and his expectation of future employment by laying him off.

In response to these remaining claims, the defendants asserted several affirmative defenses, including that the Department was immune from Mr. Stockham's claims based upon the doctrine of sovereign immunity and the public duty doctrine. The defendants also asserted that Mr. Saunders and Mr. Ausfahl were entitled to qualified immunity, official immunity, sovereign immunity, and protection under the public duty doctrine.

The defendants then moved for summary judgment. In their motion, the defendants alleged that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law because, *inter alia,* they followed the Department's layoff policy when they laid off Mr. Stockham. Specifically, the defendants claimed that, despite performing similar functions, full-time Grain Inspectors I were a separate and independent class from part-time, hourly Grain Samplers. They argued that the classifications were set by the OA when it implemented the UCP, and the Department was required to accept those classifications.

To support their motion, the defendants relied on testimony adduced during the trial of *Tuttle v. Missouri Department of Agriculture,* 172 F.3d 1025 (8th Cir.1999). Robin Tuttle was a Grain Inspector I who was laid off at the same time as Mr. Stockham. Mr. Tuttle sued the same defendants in federal district court for age discrimination and violation of his right to free speech. As part of his age discrimination claim, Mr. Tuttle argued "that the Department's failure to follow its own layoff procedures g[ave] rise to a reasonable inference of age discrimination." *Id.* at 1032. On appeal, the Eighth Circuit found that even though there was evidence that the Grain Samplers and the Grain Inspec-

tors I performed similar duties, there was no evidence to support the assertion that they were a single class of employees. *Id.*

In response to the motion for summary judgment, Mr. Stockham contended that the UCP had no effect on the classification of employees under the Department's layoff policy. Additionally, he argued that Department and Grain Inspection Program officials, including Mr. Saunders and Mr. Ausfahl, admitted that Grain Inspectors I and Grain Samplers performed the same work. Thus, he claimed, genuine issues of material fact remained regarding whether Grain Inspectors I and Grain Samplers were in the same class and, therefore, whether the defendants violated the Department's layoff policy.

The trial court granted the defendants' motion for summary judgment. In its summary judgment, the court determined that each of Mr. Stockham's claims was dependent upon his assertion that his layoff violated the Department's policy that part-time employees in an employment class must be laid off before full-time employees. As a matter of law, the court concluded that the Department did not violate that policy because Mr. Stockham, as a Grain Inspector I, was not in the same employment class as the part-time, hourly Grain Samplers when he was laid off. Mr. Stockham filed this appeal.

## Standard of Review

Appellate review of a summary judgment is essentially de novo. *ITT,* 854 S.W.2d at 376. This court's criteria for ascertaining the propriety of summary judgment are the same as those that a trial court uses initially. *Id.* This court does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law. *Id.* The

moving party has the burden of establishing a right to judgment as a matter of law and that no genuine issue of material fact exists. *Id.* at 378.

For movants who are the defending parties in a lawsuit, the prima facie showing required by Rule 74.04 is "necessarily different." *Id.* at 381. A defending party may establish a right to judgment as a matter of law by showing:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.*

Mr. Stockham presents two points on appeal. First, he argues that the trial court erred in entering summary judgment because the layoff did, in fact, violate the Department's layoff policy. As a result, he alleges that the defendants' conduct violated his substantive and procedural due process rights, breached his contractual rights with the Department, and constituted tortious interference with his business relationship and expectancy associated with his regular employment in the Department. Second, Mr. Stockham argues that the trial court erred in entering summary judgment because the issue of whether Grain Inspectors I and Grain Samplers were in the same employment class was a factual, rather than legal question, and genuine issues of material fact remain on that question. Because Mr. Stockham's first point is relevant only if his second point is successful, this court will review the points out of order.

## Different Employment Classes as a Matter of Law

■ Mr. Stockham contends that the question of whether Grain Inspectors I and Grain Samplers were in the same employment class for layoff purposes was a factual, rather than legal, question, and there is conflicting evidence on that issue which precludes summary judgment. The Department's layoff policy provided that temporary employees in a class must be laid off prior to the layoff of full-time employees in the same class. The layoff policy did not define the term "class."

Because the layoff policy did not define the term "class," Mr. Stockham argues that whether Grain Inspectors I and Grain Samplers were in the same class for layoff purposes *is* a factual, rather than legal issue, and the conflicts in the evidence regarding the similarities in functions of Grain Inspectors I and Grain Samplers preclude summary judgment. In response, the defendants contend that regardless of the similarities in their functions, Grain Inspectors I and Grain Samplers were placed in separate classes when the OA, at the legislature's direction, classified all positions within the Department. The defendants argue that the Department was bound by the OA's classification, and could not consider the positions to be in the same class for any purpose, including for layoffs.

The critical issue, therefore, is the effect of the OA's determination that the two positions were in different classes. The OA's determination was made pursuant to certain provisions in Chapter 36, RSMo. Chapter 36 is the State Personnel Law, and it was enacted in 1979. *Hopkins v. Saunders,* 93 F.3d 522, 524 (8th Cir.1996). The State Personnel Law contains a merit system applicable to several government

agencies. *See* § 36.030.1, RSMo 1994.[2] The legislature did not include the Department of Agriculture among those agencies to which the state merit system applies. *See id.*[3] Rather, the Department of Agriculture was, and continues to be, governed by its own merit plan. ·

Although the state merit system contained in Chapter 36 does not apply to the Department, the legislature made the employee classification provisions of Chapter 36 apply to the Department when it enacted § 36.031 in 1990. Section 36.031 provides, in pertinent part:

> [T]hose departments, agencies and positions of the executive branch of state government which have not been subject to these provisions of the state personnel law shall after July 1, 1991, be subject to the provisions of sections 36.100, 36.110, 36.120 and 36.130, and the regulations adopted under sections 36.100, 36.110, 36.120 and 36.130 which relate to the preparation, adoption and maintenance of a position classification plan, the establishment and allocation of positions within the classification plan and the use of appropriate class titles in official records, vouchers, payrolls and communications. Any provision of law which confers upon any official or agency subject to the provisions of this section the authority to appoint, classify or establish compensation for employees shall mean the exercise of such authority subject to the provisions of this section.

This section shall not extend coverage of any section of chapter 36, except those specifically named in this section, to any agency or employee.

This classification system is referred to as the Uniform Classification and Pay System, or the UCP.

To implement the UCP in an agency such as the Department, § 36.031 provides for the director of personnel for the OA to "conduct such job studies and job reviews and establish such additional new and revised job classes as he finds necessary for appropriate classification of the positions involved." The term "class," as used in Chapter 36, refers to "a group of positions subject to this law sufficiently alike in duties, authority and responsibilities to justify the same qualifications and the same schedule of pay to all positions in the group[.]" Section 36.020(2). Thus, in classifying positions within the agency, the OA personnel director has to "ascertain the duties, authority and responsibilities of all positions subject to this law." Section 36.100.1; 1 CSR 20–2.010(1). Section 36.100.1 provides for the OA personnel director, after consulting with the appointing authority from the agency, to "prepare and recommend to the board, and maintain on a continuing basis, a position classification plan, which shall group all positions in the classified service in classes, based on their duties, authority and responsibilities." [4] *See also* 1 CSR 20–2.010(1). Upon completion of the classification plan, em-

---

**2.** All statutory references are to the Revised Statutes of Missouri 1994, the version in effect when Mr. Stockham was laid off in December 1995.

**3.** The legislature did permit those agencies who were not governed by the state merit system to adopt its provision regarding appeals of employee dismissals to the Personnel Advisory Board, which was contained in § 36.390.5. Section 36.390.7. In 1982, the Department adopted the dismissal appeals

provision in § 36.390.5 for certain of its full-time, regular employees. *Brown v. Pers. Advisory Bd.*, 879 S.W.2d 581, 583 (Mo.App.1994). Section 36.390.5 was, at that time, the only section of Chapter 36 that applied to any Department employees.

**4.** The UCP was amended in 1996 to allow the OA personnel director to delegate the allocation of positions within classes to the appointing authority. Section 36.110, RSMo 2000.

ployees affected by the allocation of a position to a class are permitted to file a written statement with OA personnel director commenting on the allocation, and are to "be given a reasonable opportunity to be heard thereon by the director." Section 36.110.

This process was followed when the OA implemented the UCP in the Department. Department employees gave job description forms to the OA, and the OA did desk audits to determine the positions' actual duties. The OA then classified the positions, and Department employees had the opportunity to appeal the classifications. In the OA's classification plan for the Department, Grain Inspectors I and Grain Samplers were placed in different classes.

Because the OA has implemented the UCP in the Department, the Department is not permitted to establish a new position or make "any permanent and substantial change of the duties, authority or responsibilities of a position" without notifying the OA personnel director in writing. Section 36.120.1. *See also* 1 CSR 20–2.010(2)(B), (D). Only the OA personnel director then has the authority to allocate the new position to a class. Section 1 CSR 20–2.010(2)(B). Likewise, only the OA personnel director and, in some cases, the OA personnel advisory board, have the authority to reallocate an existing position to a different class. § 36.120.5; 1 CSR 20–2.010(2)(D).

Mr. Stockham does not contest the mandatory nature of the UCP classifications. Rather, he argues that the UCP classifications apply only to pay schedules, and do not apply to other employment issues, including the Department's layoff policy. In support of this argument, he cites the testimony of a former Director of the Division of Grain Inspection that the UCP had virtually no effect on the merit system that governed the Grain Inspection Program,

and that the UCP simply effected a classification in pay. Also, Mr. Stockham cites the testimony of Michael Brettschneider, the manager of the classification section within the OA's division of personnel. Mr. Brettschneider testified that when the OA implemented the UCP in the Department, the OA did not review the Department's layoff procedures, and the adoption of the UCP did not affect the Department's layoff procedures.

Mr. Stockham argues that this court must defer to the interpretation of the UCP advanced by these agency officials. When interpreting statutes, however, "the cardinal rule is that the intent of the legislature controls." *Prince v. Div. of Family Servs.*, 886 S.W.2d 68, 72 (Mo.App.1994). Likewise, when interpreting agency regulations, this court looks to the legislature's intent. *Id.* It is only when legislative intent is not clear that this court "is to defer to a reasonable agency interpretation" of its regulations. *Id. See also State ex rel. Webster v. Mo. Res. Recovery, Inc.*, 825 S.W.2d 916, 931 (Mo.App.1992). To determine legislative intent, this court first examines the words used in the statutes and regulations. *Id.* This court must then interpret the statutes and regulations "in light of the purposes the legislature intended to accomplish and the evils it intended to cure." *Id.*

In this case, the legislative intent of the UCP statutes and regulation is clear in light of the UCP's purposes, so no further interpretation by the agency officials is necessary. The UCP statutes and regulation indicate that the purpose of the UCP classifications is not just to equalize pay. The regulation concerning the classification plan, 1 CSR 20–2.010, provides that the plan for each agency is to be "so developed and maintained that all positions substantially similar with respect to the kind, difficulty and responsibility of work are included in the same class; *and* that

the same schedule of pay may be applied with equity to all positions in a class." 1 CSR 20–2.010(2)(A) (emphasis added). Thus, while one of the purposes of the UCP is to equalize pay among similar positions, another purpose is to group positions based upon similarities in their duties and responsibilities in the same class.

Moreover, § 36.031 provides that the UCP classifications apply to more than salary issues, as it specifically states that "[a]ny provision of law which confers upon any official or agency subject to the provisions of this section the authority to appoint, classify or establish compensation for employees shall mean the exercise of such authority subject to the provisions of this section." Additionally, § 36.130 and 1 CSR 20–2.010(3)(D) state that the class titles set by the UCP "shall be used to designate such positions in *all official records,* vouchers, payrolls, and communications." (Emphasis added.) The Department's classification of Grain Inspectors I and the Grain Samplers for layoff purposes was compelled by law to be pursuant to the UCP. Therefore, even though the UCP did not change the Department's layoff policy, the UCP did change the classes of employees for all purposes, and not just for salary purposes.[5]

By statute and regulation, the UCP classifications apply to any employment issue within the Department in which positions are distinguished by class. A layoff is one such issue. The undisputed evidence is that when Mr. Stockham was laid off in December 1995, Grain Inspectors I and Grain Samplers were in separate classes under the UCP. Because they were in separate classes, as a matter of law, the Department did not violate its layoff policy by laying off the full-time Grain Inspectors I before laying off the part-time, hourly Grain Samplers. Since a violation of the Department's layoff policy serves as the basis for Mr. Stockham's claims of substantive and procedural due process violations, breach of contractual duties, and tortious interference with his contractual relationship, his employment, and his expectation of future employment, these claims fail as a matter of law.

Summary judgment in favor of the defendants is affirmed.

All concur.

---

5. Mr. Stockham argues that because the evidence was that there were no employment classes within the Department from 1989 to 1995 that included both part-time or temporary employees and full-time employees, the UCP does not permit them to be in the same class. He cites no evidence to support this assertion and, in fact, the evidence in the record was to the contrary. In the defendants' answers to Mr. Stockham's interrogatories, the Director of the Division of Grain Inspection stated that it was his understanding, based upon information provided to him by the Department's personnel office, that any employment class within the Department could include both part-time or temporary employees and full-time employees.